William MUMMA et ux., Petitioners,

v.

Pedro N. AGUIRRE et ux., Respondents.

No. A–9149.

Supreme Court of Texas.

Jan. 9, 1963.

Rehearing Denied Feb. 6, 1963.

Ralph E. Cadwallader, Bruce Waitz, Robert L. Joseph, V. H. McFarland and M. M. Pena, Jr., San Antonio, for petitioners.

Tafolla & Tafolla, Schweppe, Schweppe & Allison, San Antonio, for respondents.

CALVERT, Chief Justice.

In this litigation between Mr. and Mrs. William Mumma and Mr. and Mrs. Pedro N. Aguirre for the custody of Estella Aguirre, born August 23, 1955, the trial judge awarded custody to the Mummas. The Court of Civil Appeals reversed the trial court's judgment and awarded custody to the Aguirres. 358 S.W.2d 249. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

The trial judge heard the testimony of the four litigants and of two other witnesses and conferred with the child, then five years and eight months of age, in chambers, with no one else but the court's bailiff present. No formal findings of fact or conclusions of law were requested or filed, but the trial court's judgment contains a number of fact findings including findings that the Mummas are "fit and proper persons to have the care, custody and control" of Estella and that "the best interests of the minor child will be served" by giving her custody to the Mummas, with reasonable visitation rights conferred upon Pedro Aguirre.

The victim of a rather bizarre set of circumstances growing out of the frailty of human emotions, Estella, wholly faultless, is the prize of an unyielding struggle between two couples, each of which has some claim of right to the prize. But our courts do not normally concern themselves with the righteousness of claims to custody of children; their paramount concern is with the best interests of the children. Rice v. Rice, 21 Tex. 58, 67. There are rules, however, by which our courts seek, to some extent, to measure the best interests of young children in making awards of custody. There is a presumption that the interests of a young child are best served by award of its custody to its natural parents. The presumption is based upon a logical belief that the ties of the natural relationship of parent and child ordinarily furnish strong assurance of genuine efforts on the part of the custodians to provide the child with the best care and opportunities possible, and, as well, the best atmosphere for the mental, moral and emotional development of the child. State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901. However, wholly aside from the binding force of the rule of *res judicata,* the law favors a high degree of stability in a young child's home and surroundings, and to achieve that stability will not *permit* a change of custody, once judicially determined, except upon a showing of *materially* changed conditions, Short v. Short, Tex. Sup., 354 S.W.2d 933; and will not *require* it, even then, unless denying it would constitute an abuse of discretion by the trial judge. Taylor v. Meek, 154 Tex. 305, 311, 276 S.W.2d 787, 790. Sometimes, as here, these two rules collide.

Estella is the natural child of Pedro and Cecilia Aguirre, born to them while Pedro was married to the present Mrs. Mumma and while Cecilia was unmarried. Pedro and Mrs. Mumma (Anna) were then the parents of three children, a daughter and two sons. On the advice of a priest, the present Mrs. Aguirre, then Cecilia Garcia, gave Estella, when five days old, to Pedro. Pedro took Estella to his home, told Anna that he was the child's father and that the mother was dead, and asked Anna to accept and care for the child. He indicated to Anna that he would leave with the baby if she declined. Anna chose at the time to keep both.

From that day to this Anna has reared and cared for Estella as her own child, giving her the same affection and attention that she has bestowed upon her own three children.

Pedro and Anna were married August 11, 1946. He first became acquainted with Cecilia in 1951 and began having "an affair" with her in 1953. Cecilia knew Pedro was married before the affair began. After the birth of Estella the affair was broken off for about a year, but then started anew. A second child was born of the relationship before Anna divorced Pedro on November 21, 1958. The cause or grounds of the divorce are not reflected in the record. Pedro and Cecilia were married November 22, 1958, the day following Pedro's divorce. At the time of the trial, April 19, 1961, Cecilia was expecting the birth of another child within a week. Anna married William Mumma in 1959.

When judgment was rendered divorcing Pedro and Anna as husband and wife, custody of Estella and the three children of Pedro and Anna was awarded to Anna. That custody had existed for approximately two and one-half years when judgment was rendered in this case. The only changes in conditions between the date of the custody judgment and the date of this trial were the remarriages of Pedro and Anna, the filing of a birth certificate by Pedro and Cecilia showing the surname of Estella to be "Aguirre" rather than "Garcia," and the development of an acquaintance between Cecilia and Estella through exercise of the right of visitation given Pedro by the 1958 divorce decree.

The Court of Civil Appeals considered the case as one requiring a material change of conditions as a basis for ordering a change of custody of Estella. It thought the changed conditions heretofore mentioned were sufficient to *require* a change of custody. The court pointed out that both homes were fit and proper; that to Estella both Anna and Cecilia were known as "mother"; that in the Aguirre home Estella would bear the same surname as her parents; that there was no finding by the trial judge that the Aguirres were not fit and proper persons to have custody of Estella and the evidence showed them to be fit and proper; that in the Mumma home Estella would be with a stranger in Mr. Mumma and in the Aguirre home she would be with her own father with whom she had always lived.

It seems to us that the reasons which could have motivated the trial court in leaving Estella in the custody of the Mummas are every bit as logical: That she will be in the custody of the woman who has cared for her throughout her entire life and whom she has always known as her mother; that she had been in the home of William Mumma for some two years at the time of trial, now approximately three and one-half years, with ample time to establish a mutual relationship of love and affection; that the benefits to be derived from Anna's home have increased by virtue of her marriage to Mumma; that in the Mumma home Estella will have the continued association and companionship of three half-brothers and sisters with whom she has been reared as a family unit.

It is in situations with such conflicting considerations that the trial judge

must be accorded the right to exercise a large measure of discretion in denying a change of custody of a child. He has an opportunity to observe and evaluate the personalities of the contending claimants, to weigh the credibility of their testimony, to assess the physical, mental, moral and emotional needs of the child, and to adjudge from personal observation which of the claimants can best meet the needs of the child. His judgment should be reversed only when it appears from the record as a whole that he has abused the discretion entrusted to him. Taylor v. Meek, supra. We hold that the record before us leads to no such conclusion

Respondents rely principally on our decision in State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901, as supporting the conclusion of the Court of Civil Appeals. That case is clearly distinguishable. In that case the trial court awarded custody of a child to foster parents, rather than to the natural mother and her husband, upon a finding that "the interest and welfare of the child, Austin Dillard, will be *as well, if not better,* subserved by remaining with the respondent and his wife, who have adopted it as their own, than if his possession and custody were given to his mother, the applicant herein." Denial of custody to the natural mother was predicated on the trial court's conclusion that having voluntarily surrendered custody of the child to others the burden was on the natural mother to prove that its interests would be best served by taking the child from the foster parents and awarding it to her. The Court of Civil Appeals affirmed on the same theory. State ex rel. Wood v. Deaton, Tex.Civ.App., 52 S.W. 591. The opinion of this Court dealt primarily with that question. The rule of law followed by the trial court and the Court of Civil Appeals was held to be unsound.

If the finding of the trial judge in this case had been the same as that of the trial judge in State ex rel. Wood v. Deaton we would be faced with a much more difficult

question which might be controlled by that decision; but the finding is not the same. There is no equivocation in the finding in this case. The express and positive finding is that the interests of Estella Aguirre will be best served by continuing the custody of the Mummas. Moreover, there was not in the Deaton case, as there is here, a prior judgment of custody; there was, therefore, no requirement in that case for proving materially changed conditions as a basis for awarding custody to the natural parent.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.