**H. V. ANDREWS et ux., Appellants,**

**v.**

*Loyd Donald* **WARREN, Appellee.**

**No. 7038.**

Court of Civil Appeals of Texas.

Beaumont.

March 27, 1969.

Rehearing Denied April 17, 1969.

Daniel & Morrison, Liberty, for appellants.

Cain & Cain, Liberty, for appellee.

PARKER, Chief Justice.

The 75th Judicial District Court of Liberty County, Texas, entered a decree of divorce in Cause No. 20,789, styled Dora Frances Warren vs. Loyd Donald Warren, on June 16, 1965, wherein the temporary custody of the three minor boys, all being natural children of the parties of said divorce, was awarded to Dora Frances Warren's mother and step-father, Mr. and Mrs. H. V. Andrews. On August 26, 1966, the permanent custody of the boys was awarded to Mr. and Mrs. H. V. Andrews, with reasonable rights of visitation granted to Dora Frances Warren (Nugent) and Loyd Donald Warren, in keeping with the best interests of the boys and suitable to the convenience of Mr. and Mrs. H. V. Andrews. This latter judgment was res judicata of the childrens' best interests and of their custody as conditions then existed, recognized as such by the trial court and by this court. Not being in the record, under Rule 428 Texas Rules of Civil Procedure, this court caused a supplemental transcript to be prepared and filed, containing such judgments.

Loyd Donald Warren brought this suit to change the permanent custody to him of the three minor boys, Dennis Earl Warren, Darrel Wade Warren, and Douglas Paul Warren, alleging materially changed conditions, circumstances and surroundings affecting the best interests of the boys. Mr. and Mrs. H. V. Andrews contended that the best interests of the boys would

be served by the Andrews' retaining permanent custody. Their mother, Dora Frances Warren (Nugent) and her present husband, O. L. Nugent, filed no answer. The trial was to a jury and upon the answer of the jury to the one issue submitted, the court entered its judgment on July 11, 1968, clarified on August 30, 1968, awarding the custody of such boys to their father, Loyd Donald Warren, but suspending the change of the custody, care and control of said minors from Mrs. H. V. Andrews to Loyd Donald Warren until the Andrews' right of appeal had been fully exhausted. Judgment of the trial court is affirmed.

The Andrews have points of error contending (1) there is no evidence to support the finding of the jury or warrant the submission of said issue and (2) there is insufficient evidence to support the jury's answer to the special issue and (3) the answer of the jury to the special issue is so against the overwhelming weight and preponderance of the evidence that manifest injustice has been done.

Special Issue No. 1 and the jury's answer with the instruction of the court are as follows:

"SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that since the rendition of the judgment of August 26, 1966, granting custody of the minor children, Dennis Earl Warren, Darrel Wade Warren, and Douglas Paul Warren, to Mr. and Mrs. H. V. Andrews, there has occurred such a material change of conditions that the best interest of said minor children requires a change of custody to Loyd Donald Warren?

"Answer 'Yes' or 'No.'

"ANSWER: Yes

"In this connection, you are instructed that a showing of only slight change of conditions is not sufficient to justify the modification of the former judgment awarding the custody of the minor children. You are further instructed that the burden of proof is on the Plaintiff, Loyd Donald Warren, to show that conditions have so materially changed since the rendition of the former judgment of August 26, 1966, that it would be injurious to the welfare of the children to leave their custody as previously adjudicated and that to change the custody would be a positive improvement for the children."

In passing upon appellants' first point of error, we consider the evidence only favorable to the finding of the jury.

*THE EVIDENCE*: On August 26, 1966, Loyd Donald Warren, called Donald, was a single man with a house and no wife. Then he married Anna Lou Warren on November 9th, 1966. She is a good woman, good housewife, wants to have the boys and love and care for them. She knew them before the divorce.

Mrs. Dora Nugent, the mother of the boys, was positive in her testimony that it was to the best interests of the children that their father have their custody even if he did not allow her to visit them; that Warren's wife was capable and would care for them properly, keep a clean house, wash and iron clothes; and that the children would be happier. She detailed the lack of affection in the Andrews' home, stating the Andrews were too stern and unyielding; that the children were not really permitted natural wholesome activities of children their ages. Also, she testified that since August 26, 1966, she had seen Andrews under the influence of too much beer driving an automobile with the boys in the car; that the Andrews habitually drank every night. She further testified she had never known of Donald being under the influence of alcoholic beverages.

Donald Warren testified his present wife is a high school graduate with 1½ years in Lee College. When married, they decided to settle themselves and plan for the future. They made repairs to their home, situated on a acre in Hull, Texas, also improving it by adding a bedroom for the

boys. It is 12 x 28 feet, with a bath, lots of closet space, a built-in dressing table, a place to study at one end, and twice the size of their bedroom at the Andrews' where they are crowded. At the time of trial, the boys were 9, 8, and 5 years of age with the two oldest attending school. After being married seven months, Warren made his application to obtain custody of his boys, satisfied that he had a wife not only capable of rearing them but wanting to do so. She will never have any children of her own.

It is undisputed that Warren is a good moral man and has at all times wanted the custody of his boys. He was in current shape in paying $130.00 a month for their support and maintenance. Before June 14, 1967, he earned $600.00 a month. He changed employers then, being paid $725.00 a month. This change in employment he considered to be a promotion and would allow him to spend more time with his sons.

After August 26, 1966, Donald often visited his children in the Andrews' home, oftentimes having supper with them. This regularity of visits decreased after his present marriage. The Andrews refused to allow him to visit the boys when with his wife. On subsequent visits by Warren or by his former wife, the Andrews in the presence of the boys turned the conversation to the divorce, the trial and their remarriages. Whenever possible, Warren visited on a day he could take his sons outside the house where they could play. Inside the Andrews' house, Andrews constantly called down the boys and ordered them to be quiet. The atmosphere between Warren and Mrs. Andrews was described by Warren as something that could not be called pleasant with her usual comment, "You know which way you came in here." In Warren's presence, Mrs. Andrews told the children they could never be happy with their father and only the Andrews were going to help them.

Colored snapshots show the Andrews' home. The three boys are in some, but not with other children. The Andrews took them along on trips for the amusement of the Andrews to lakes, to fish and visit grown people. There is no evidence of the Andrews making an effort to have the children play with other children their own ages in activities suitable to their ages except they took them to a church Christmas party, but not to a school Christmas party. The Andrews have no telephone. When Warren appeared to visit his sons, oftentimes the Andrews would tell the children to go to bed, take a bath and allow Warren little or no time with them.

The Andrews' home is on a little farm near Clark, Texas. At the time of trial, Andrews was 48 years old, his wife slightly older. Andrews was employed by Trinity River Sand and Gravel Company with take-home pay of $95.08 per week, working five days a week. Then he attends to his farm and cattle working hard. The other daughter of Mrs. Andrews, a witness for the Andrews, testified that Andrews did not drink at noon, but needs to calm his nerves at night and habitually drinks at that time. In the Andrews' home, the children are disciplined. Andrews admitted that on weekdays he could not assist the boys in activities of any kind with other children.

Mrs. Andrews admitted they did not take the boys to school for Christmas parties. If other boys were playing baseball where she went to buy groceries, she allowed them to watch for a while. Colored snapshots, selected by Mrs. Andrews from many taken, never show these children with other children. The Andrews would take them with them on trips to visit the Andrews' kinpeople. The general picture is the children were spectators to older generation's activities except at school. There is no evidence of the Andrews making an effort to have the children participate in activities with other children suitable to their ages, except they did take them to a Christmas party at their church.

Before this trial, Mrs. Andrews discovered the mother was not going to testify in favor of the Andrews retaining custody

of the boys. Thereupon, Mrs. Andrews, in front of the boys, called her a slut and liar. Then Andrews had all three of the youngsters line up in a straight line and tell their mother they did not want to be with her.

We think a fair analysis of the testimony, favorable to the jury finding, supports the jury's answer in accordance with the court's instruction. A brief summary of the changes of conditions is as follows:

(1) Donald Warren is now married to a good woman who is a good housekeeper. Both want to have the boys to love and care for them.

(2) Donald's wife will keep a clean home, wash and iron the clothes and take excellent care of the boys.

(3) Donald's home has been repaired and improved so more space is available to care for the boys. The bedroom in the Andrews' home is too small. The new bedroom in Warren's home is much better.

(4) Donald has changed employment so he will have more money and more time to spend with his sons.

(5) The attitude of the Andrews toward Donald has changed substantially since he married his present wife, adversely affecting Donald's relationship with his sons.

(6) The Andrews' home is no longer a good place for these boys to be raised because of the absence of affection, the stern and unyielding attitude of the Andrews, the drinking of Andrews to settle his nerves and lack of any encouragement or effort by the Andrews to make it possible for the boys to associate with other boys their own ages.

The cumulative effect of the above evidence shows materially changed conditions authorizing the change of custody of the boys to Warren, as we construe Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787 (1955), (a jury case), before the amendment of Article 4639a, V.A.C.S., in 1961, and Supreme Court of Texas opinions thereafter, namely, Mumma v. Aguirre, 364 S.W.2d 220 (Tex.Sup., 1963); Herrera v. Herrera, 409 S.W.2d 395 (Tex.Sup., 1966). Here, the trial judge entered a judgment conforming to the determination of the jury verdict as required by the amendment of Article 4639a, V.A.C.S., in 1961. Appellants' Amended Motion for New Trial was overruled in the sound discretion of the trial court. The jury and the trial court each had an opportunity to observe and evaluate the personalities of the contending claimants, to weigh the credibility of their testimony, to assess the physical, mental, moral and emotional needs of the children, and to adjudge from personal observation which of the claimants can best meet the needs of the children. The judgment of the trial court should be reversed only when it appears from the *record* as a whole that he has abused the discretion entrusted to him. (Paraphrasing Mumma v. Aguirre, supra). (Emphasis ours). Also see Kirchner v. Van Skike, 410 S.W.2d 467 (Tex.Civ.App., 1966).

In Taylor v. Meek, supra, the trial court entered a judgment contrary to the jury finding. We follow the holding in Taylor v. Meek, supra, 276 S.W.2d on page 791, that the Court of Civil Appeals does not have the power to substitute its judgment for that of the trial court in the absence of an abuse of discretion.

Appellants' Point of Error One is overruled.

Considering the entire record, including all the evidence, Appellants' Points of Error Two and Three are overruled.

Again considering the entire record, and limiting our consideration to the record, we hold the trial court did not abuse his discretion in overruling Appellants' Amended Motion for New Trial or otherwise.

Appellants' Point Four is:

## "POINT FOUR

"THE TRIAL COURT ERRED IN OVERRULING APPELLANTS' MOTION FOR MISTRIAL MADE TO

AND BECAUSE OF THE IMPROPER AND HIGHLY INFLAMMATORY QUESTION ASKED BY THE ATTORNEY FOR APPELLEE AND THE UNTIMELY RESPONSE THERETO, CONCERNING THE CONDUCT OF MRS. H. V. ANDREWS WITH ANOTHER MAN WHICH TOOK PLACE MANY, MANY YEARS PRIOR TO AUGUST 26, 1966."

Early in the first day of trial, the following occurred:

"Q. Have you ever seen your mother in bed with another man not her husband? [the witness being Mrs. Nugent]

"MR. MORRISON: I object to this, Your Honor,

"A. Yes, sir.

"MR. MORRISON: Until he ties it down to some certain time.

"Q. How old were you then?

"A. Around four or five.

"MR. MORRISON: I object to this.

"THE COURT: Objection sustained, and the jury is asked not to consider that question or the answer given by the witness.

"A. She told me she was married at that time.

"MR. MORRISON: I insist on this objection.

"THE COURT: Don't volunteer any statements."

At that time, no motion was made for mistrial.

On the second day of trial at 3:00 p. m., the jury was excused and the following occurred:

"MR. MORRISON: Defendants, Mr. and Mrs. H. V. Andrews, by and through their attorney of record herein, make a motion for mistrial for the following reasons:

"On examination of Dora Frances Warren Nugent by Mr. C. B. Cain, Jr., the question was asked concerning Mrs. H. V. Andrews and her presence in bed with another man at sometime prior to August 26, 1966. Such question and answer thereto, even though objected to by counsel for defendant and followed thereby by an instruction from the Court to the jury to disregard, was so inflammatory and so prejudiced the jury that the defendant's case has been materially and permanently damaged; and for these reasons the defendants request the Court to declare a mistrial herein.

"Respectfully submitted

"_____

"Daniel & Morrison

"MR. CAIN: I would like to object to this motion for mistrial for the reason that the same is not timely made, being made the second day of this trial, when the act that the defendants contend to be grounds for mistrial occurred the day previous, and for the further reason that the Court did instruct the jury not to consider this evidence.

"THE COURT: The Court overrules the motion for mistrial."

Warren first interrogated the adverse witness, Mrs. Andrews. Then, Mrs. Nugent, the mother, testified, with the questions and answers complained of appearing on pages 38 and 39 of the Statement of Facts. The court instructed the jury not to consider the question or answer. Thereafter, testimony was heard from ten other witnesses, plus Mrs. Andrews, taking some 200 pages of the Statement of Facts before the Motion for Mistrial was made and overruled by the trial court. Afterwards, only one other witness was placed on the stand, the oldest boy, Dennis Warren, who simply assented to the questions asked by the appellants' attorney to the effect that

he loved his father, his mother, his grandmother and his grandfather. It was only after 200 pages of testimony had been taken that the attorneys for appellants for the first time moved for mistrial based entirely on the question and answer of Dora Nugent.

■ Applying Rule 434, T.R.C.P., to determine whether the question to and answer of the witness was calculated and probably did cause rendition of an improper verdict and judgment, we have examined the entire record. The trial court immediately instructed the jury to disregard the question and answer and admonished the witness not to volunteer any statements. The fact that the jury found for appellee is not conclusive evidence that the jury was influenced by the erroneous question and answer to return an improper verdict. Appellant does not aid us by citing any authorities. We have already held there was sufficient evidence to support the jury finding. Considering the entire record, as and when the alleged prejudicial error occurred, the instruction of the court, and applying Rule 434 and the opinion in Walker v. Texas Employers' Insurance Association, 155 Tex. 617, 291 S.W.2d 298 (1956), appellants' Point of Error Four is overruled.

Judgment of the trial court affirmed.

STEPHENSON, Justice (concurring).

. I concur with Chief Justice PARKER. The primary purpose of this concurring opinion is to discuss some of the questions raised by the dissenting opinion.

No mention is made in the dissenting opinion as to which point of error was being considered, during the discussion of the evidence. At one point the statement was made that appellants' points of error challenged the *sufficiency* of the evidence and evidence was reviewed that was not favorable to the jury finding. This indicated the insufficiency of the evidence and the point of error that the finding of the jury was contrary to the great weight and preponderance of the evidence were under consideration. However, at the conclusion of the opinion, the statement is made that the case should be reversed and rendered, showing conclusively that the "no evidence" point was actually passed upon.

I agree with the statement in the dissenting opinion in this case that in Knowles v. Grimes, 437 S.W.2d 816 (Tex.Sup., 1969), supra, Justice Steakley reviewed the decisions which rule this case. The Supreme Court held that the evidence in the trial court did not show materially changed conditions had occurred since the Alabama judgment. (Alabama judgment, January 18, 1967, and the suit to change custody was filed July 14, 1967.) A review of the Court of Civil Appeals' decision in 431 S.W. 2d 602 demonstrates that no evidence is shown as to any change of condition. The Court of Civil Appeals' opinion states there was nothing in the record to show what the conditions were at the time the Alabama judgment was rendered, and presumes that, inasmuch as it was not stipulated the mother was a fit person now to have custody, the Alabama judgment must have been based upon a finding that she was unfit and therefore there was a change of condition. *Such was not the situation in the present case.* The majority opinion specifically sets forth the materially changed conditions after carefully setting forth the evidence to support them.

I do not agree that Justice Steakley, by citing Taylor v. Meek, supra, impliedly removed one of the main changes relied upon by the majority opinion, that a home had been established since the first decree. The situation in Taylor v. Meek was the exact opposite from the one facing us here. In that case, the trial court found that there had *not* been a material change of condition, and the Supreme Court in upholding that decision mentioned the fact that the establishment of a home would not as a matter of law show a material change of condition. In the present case, the burden is shifted to the appellants to show as a matter of law that the establishment of a

home (among the many other things) failed to show a material change of condition. Unless this proposition is thoughtfully considered, one may come to the conclusion expressed in the dissenting opinion.

KEITH, Justice (dissenting).

When appellee, Donald Warren, and his then wife, now Mrs. Dora Nugent, were divorced on June 16, 1966, "the temporary sole and exclusive custody" of the children was awarded to the maternal grandparents, the appellants herein. This, in effect, confirmed a prior informal arrangement whereby appellants had been keeping the children since the filing of the divorce suit some time earlier that year. The decree further provided that this custodial award would continue "for a period of time to be determined by this Court from the date hereof and at which time the Court will consider the award of the permanent care, custody and control of said children." Each parent was permitted the right to visit with the children "at reasonable times and under reasonable conditions."

Thereafter, each of the natural parents of the children sought a "redetermination of the custody" of the children in a proceeding to which the Andrews were parties. In a non-jury trial, the court denied both prayers for a change since the court was of the opinion "that it would be to the best interest of said minor children for the permanent custody of said children to be awarded to Mr. and Mrs. H. V. Andrews." The decree, dated August 26, 1966, allowed each of the natural parents rights of reasonable visitation, but contained this limitation thereon:

"However, the lawful custodians of said children Mr. and Mrs. H. V. Andrews, shall have the sole and lawful custody and responsibility for said children. The reasonable right of visitation with said children granted herein to Dora Frances Warren Nugent, and Loyd Donald Warren, shall at all times be in keeping with the best interest of said children and

suitable to the convenience of Mr. and Mrs. Andrews, the children, and Mrs. Nugent and Mr. Warren."

The three boys, now 9, 8, and 5 years of age respectively, have been living in the home of appellants since March, 1965. The evidence discloses that they are well adjusted, the two older boys attend school regularly (the younger boy being scheduled to enter school next year), are healthy, and receive religious education. The home of the Andrews is clean, adequate, and little fault can be found with their surroundings. The school teachers of the older boys testified as to their observations and concluded that the boys were in a good home with the Andrews. Neighbors testified as to adequate and proper conditions under which the children were being reared.

All parties are in agreement that the natural mother, the daughter of Mrs. Andrews, is unfit to care for the children, although she testified that in her opinion the children would be better off with their father and his new wife, a former babysitter of the children when she and Warren were living together.

Appellee is morally fit, apparently a hard worker, has paid all of the child support ordered by the judgment. He has been married since November, 1966, and he and his new wife, Anna, live in the house formerly occupied by Warren and Dora Nugent, the boys' mother. Anna operated a beauty shop until the Saturday prior to trial, and testified that if she and Warren were awarded the children she would cease working outside of the home.

We have been pointed to no evidence in the record which shows a change in conditions insofar as the Andrews are concerned. The testimony is all confined to what Warren contends are changes in *his* condition. The changes relied upon by Warren to authorize a revision of the judgment were basically these: (a) he has remarried and has a wife, Anna, who would help him rear the children; (b) is building a room on the house for use by the boys, if he gets

them, although the improvements had not been completed at the time of the trial; and (c) he had a different job and makes more money (a monthly increase from approximately $550.00 to $725.00). Additionally, he complains of the fact that the Andrews will not permit him to take the children away from their home for visitation and to go to the movies, etc., although he is permitted to visit them in their home.

As has been stated in the majority opinion, the jury found that the conditions had changed materially since the entry of the decree in August, 1966. Appellants' motion for the peremptory instruction, objections to the charge, motion for judgment non obstante veredicto, motion for new trial, and their points upon this appeal all challenge the sufficiency of the evidence to show materially changed conditions which would justify a change of custody. The point has been raised at every possible stage in the proceedings and must now be met here.

Two of our more experienced judges, both now retired, have participated in the proceedings involved here. Judge P. C. Matthews awarded the custody of the children to the Andrews and Judge Ewing Werlein, who has graced both trial and appellate benches with distinction, presided over the trial of this cause. So, when I approach the decision herein, recognizing that to the trial judge is confided an unusual amount of judicial discretion in such cases, I do so with a great deal of respect for the judges involved. But, feeling that the majority is not following the teachings of our Supreme Court upon the subject, I must dissent.

The most recent expression upon the subject of which I am aware is Knowles v. Grimes, 437 S.W.2d 816, February 19, 1969 (rehearing denied March 19, 1969), wherein Justice Steakley reviewed the decisions which I believe rule this cause. I do not consider the fact that in *Knowles* the full faith and credit clause of the Constitution was involved in any manner detracts from its applicability to this case. Certainly,

we are not required to give more finality to the judgments of sister states than to those of our own. Here, as in *Knowles,* we are concerned "only with the changes, if any, occurring in the period" subsequent to the August decree.

*Knowles,* in addition to reiterating the full faith and credit holding in such matters, codified the prevailing law in these respects:

(a) "A final judgment in a custody proceeding is res judicata of the best interests of a minor child as to conditions then existing."

(b) "There must be a showing of materially changed conditions to authorize a change of custody."

(c) "As a matter of public policy, there should be a high degree of stability in the home and surroundings of a young child, and, in the absence of materially changed conditions, the disturbing influence of re-litigation should be discouraged."

(d) Until the party seeking the change of custody shall show materially changed conditions since the entry of the judgment, such party does not "overcome the bar of res judicata" and "presumptions favorable to her [him] as a natural parent did not arise." (437 S.W.2d at 817–818.)

By citing Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787 (1955), Justice Steakley impliedly removed one of the main "changes" relied upon by Warren in this instance, the fact that he had established a home since the entry of the decree. Such does not, as a matter of law, warrant a change in custody, but is to be considered as a factor therein within the discretion of the trial judge. (276 S.W.2d at 790).

But, the reference to Taylor v. Meek did more—it invoked this applicable holding:

"* * * So it cannot now be questioned that at that time [entry of decree] it was to the best interest of the child

to award custody to the grandparents. In determining the question of the child's best interests, there is this difference between the first award of custody and a change of custody. *Because a change of custody disrupts the child's living arrangements and the channels of a child's affection, a change should be ordered only when the trial court is convinced that the change is to be a postitive improvement for the child."* (Emphasis and bracketed matter supplied).

The trial court in this instance did not make any findings of fact or conclusions of law, but accepted the verdict of the jury and rendered judgment in conformity thereto. He did, however, suspend the effect of the custody change until the completion of the appeal therefrom. I cannot, therefore, determine whether in entering judgment he did so pursuant to the provisions of Article 4639a, V.A.C.S., making the jury finding binding rather than advisory, or because he approved of the result. The majority correctly notes that the jury found, upon appropriate instruction, that since the entry of the judgment awarding the custody to the maternal grandparents, there "has occurred such a material change of conditions that the best interest of said minor children requires a change of custody" to the father.

The amendment of Article 4639a, V.A.C.S., in 1961, introduced a new factor into the law relating to custody of minors when the fact issues are determined by a jury. The provisions of the amended statute read:

" * * * In any hearing held in this State concerning the custody of a child, whether pursuant to a divorce cause or not, any party to the hearing may, upon assumption of jury costs, demand a jury to determine custody of the child, *and the judgment of the court must conform to that determination. * * *"* (My emphasis).

I am in accord with the views of Judge Williams of the Dallas Court, speaking in Welch v. Welch, 369 S.W.2d 434, 437 (1963, no writ), that the effect of the amendment is to place the jury finding in a custody case upon the same basis as a jury finding in any other case tried by a jury. Necessarily, this means that in passing upon the points challenging such findings, we invoke the same rules which control in the other civil cases.[1]

But, I would point out that Justice Steakley also cited Bukovich v. Bukovich, 399 S.W.2d 528 (Tex.Sup., 1966) in support of his decision in *Knowles.* In *Bukovich,* there was a verdict of the jury favorable to the mother, which was found to have "an abundance of evidence" to support it (391 S.W.2d at 191), but the Supreme Court held that "this evidence will not support the finding of a material change of conditions since the Indiana decree, from which it follows that the change of custody order of the trial court cannot stand." (399 S.W.2d at 530).

To my mind, the evidence supporting the verdict in *Bukovich* was stronger than that in the case at bar. There, the father who prevailed in the Supreme Court "admitted in effect that he and the child were not acquainted and that if he should be awarded its custody he would go back to the motel and if necessary spend a week getting acquainted with him." (391 S.W.2d at 192). It seems to me that the "high degree of stability in the home and surroundings of a *young child" is not achieved by a change based upon such insubstantial changes of conditions as are shown here. See: Ogletree v. Crates, 363 S.W.2d 431, 436 (Tex. Sup., 1963) and Mumma v. Aguirre, 364 S.W.2d 220, 221 (Tex.Sup., 1963), both opinions by Chief Justice Calvert and both being cited in *Knowles.*

1. Accord: Kirchner v. Van Skike, 410 S.W.2d 467 (1966, no writ); Heiskell v. Heiskell, 412 S.W.2d 774 (1967, error ref., n. r. e.); Huff v. Stafford, 429 S.W.2d 620 (1968, error dism.); Harrelson v. Davis, 415 S.W.2d 293 (1967, no writ).

I think that at best, the father in our case has shown only a slight change of conditions and such is insufficient. In a two-year period (June 1966–August, 1968), there have been three hearings wherein the father has sought to get the custody of these children. These frequent "hearings are discouraged and not encouraged." Short v. Short, 163 Tex. 287, 354 S.W.2d 933, 936 (1962), also cited in *Knowles*.[2] To me, an appropriate answer to the majority is to be found in Justice Smith's concurring opinion in Bukovich (399 S.W.2d at 530):

"There is no evidence of change of conditions in the circumstances of the father, the custodian parent. Therefore, the custody should not be changed. * *"

The holding of the majority that the jury and the trial judge had the "opportunity to observe and evaluate the personalities of the contending claimants, to weigh the credibility of their testimony, to assess the physical, mental, moral and emotional needs of the children, and to adjudge from personal observation which of the claimants can best meet the needs of the children," is not a satisfactory answer to our problem. It completely overlooks the element of finality in custodial decrees, the stability of the home of the children, the frequent confrontation of contending parties over their custody, and a host of other factors which seem to be implicit in the series of cases by our Supreme Court mentioned in this dissent. We do not, and the trial court below in this case did not, write upon a clean slate. We look only to the events which have occurred since the last final decree. The majority approaches the solution of the problem as if it were an original determination of custody. If such were true, I would have no occasion to dissent.

Here, there has been no showing of a change in the circumstances of the grandparents to whom custody was given nearly two years before the trial of the case below. Believing that this case is ruled by the teachings of *Knowles* and the cases therein cited, and that the judgment should be reversed and here rendered for the appellants, I respectfully file this dissent.

2. See also: Smith v. Clements, 424 S.W.2d 326, 328 (Tex.Civ.App., 1968, error ref. n. r. e).