Bernice Krejci WEST et vir., Appellants,

v.

Emil KREJCI, Appellee.

No. 11771.

Court of Civil Appeals of Texas, Austin.

Oct. 28, 1970.

Rehearing Denied Nov. 18, 1970.

Harris & Holbrook, Robert O. Harris, Jr., Killeen, Mitchell, Gilbert & McLean, Arthur Mitchell, Austin, for appellants.

McClain & Stump, W. K. McClain, Georgetown, for appellee.

O'QUINN, Justice.

This appeal is from judgment of the district court denying an application to modify a prior judgment in a divorce action awarding custody of two minor children to the father.

Appellant Bernice Krejci West, joined pro forma in this case by her husband, formerly was married to Emil Krejci, the appellee. Appellant and appellee were divorced in 1963, and custody of the two infant daughters was placed in Emil Krejci, their father.

Appellant brought this suit in 1969 and alleged that "a change of circumstances has occurred of a sufficient magnitude that the best interests and welfare of the two minor girls demands a change of custody to their natural mother from their father." The two girls at the time of the hearing in February, 1970 were aged eight and ten.

The trial court, following a hearing without the intervention of a jury, denied the application for change of custody and found that "the custody, care and control of said minor children * * * should remain as fixed by the Divorce Decree of August 22nd, 1963."

We affirm the action of the trial court.

The changes in circumstances relied upon by appellant in seeking custody were that she had remarried, that she and her husband were both gainfully employed, financially able to provide for the children, and could provide a home for the girls under the supervision of their natural mother. Appellant alleged that the father of the girls, although having a home with three bedrooms, furnished only one bedroom, in which the father and two girls slept in one bed. Appellant also alleged that the girls were not required by their father to keep their clothes and themselves clean and neat, that the father frequently took the girls with him to "a tavern" where he drank beer and played dominoes. Appellant generally alleged that the father "has neglected the care and needs of the children, has not provided a proper home environment, has taken the children to places that children of that tender age should not go, has not acted in the best interest and welfare of the children."

Appellee and the girls live at Schwertner and the father works in Temple. Each morning the father takes his children to the home of the Tschoerner family where they are served breakfast and sent to school in Bartlett by bus with the Tschoerner children. Each afternoon the father picks up the girls, after they have returned by bus to the Tschoerner home, about 4:30 o'clock on his way home from work. On Saturdays and Sundays the father is at home with the children. On Sundays, except when the girls are visiting their mother at Comanche Gap, the father takes the girls to church.

Appellee has the family laundry done in a washateria in Bartlett but engages a neighbor to iron the girls' clothes. The father also calls on various neighbors to do baking for the girls when they are asked to take cookies or cup cakes to school

affairs. The father takes the children to school activities and attends meetings of the P. T. A. Neighbors testified at the hearing that appellee is attentive to the girls, plays games with them in the yard, and takes them with him to church and places of business while shopping. Appellee has built a new home for himself and the children, the house having three bedrooms.

It appears undisputed that the "tavern" at which the father plays dominoes and drinks beer is a combination grocery and service station, operated by a Schwertner family, at which residents of the community gather to talk, play dominoes, drink beer and soda water, eat ice cream, and also buy groceries, as well as gas, oil, and tires. The girls sometimes go with their father to the station, where they have soft drinks or eat ice cream, and usually play outside with other children while the grown folk are talking, playing dominoes, and having beer.

The trial court heard testimony from appellant and her husband and five other witnesses, including appellant's brother. It was shown that the Wests are respected citizens in and about Comanche Gap, where they live in a two-bedroom mobile home, and Mr. West, retired from military service, operates a bait stand near a lake.

Mrs. West and three female witnesses testified that the Krejci girls, on occasions when they visited Mrs. West, often were in dirty or unironed dresses, had dirty ears and scalp, and showed a lack of proper care of their hair and finger nails. Mrs. West expressed her concern that the girls receive instructions and guidance regarding feminine hygiene, especially since the older girl was beginning to evidence the approach of womanhood. It was shown that some guidance in such matters has been given both by Mrs. West, when the girls visited with her, and by their father. The girls are with their mother two Sundays each month and also spend several weeks with their mother during school vacation time in the summer.

The trial court heard fourteen witnesses for appellee, including the girls' grandfather and the pastor of the Catholic church at Corn ¹ Hill where appellee and his daughters regularly attend services. Most of the witnesses were neighbors and friends from the Schwertner community who observed appellee and his daughters almost daily. The witnesses uniformly found the girls well cared for, mannerly, polite, happy, friendly, respectful, neat, clean and well-groomed. The testimony was undisputed that the relationship between the father and his two daughters was one of mutual respect and devotion, and that appellee was a good father with a reputation in the community for being a law-abiding citizen.

Appellee testified that the children had slept with him "ever since they were little babies" but that as they get older it will be necessary "to let the girls sleep by themselves" in one of the other bedrooms, since he could "put a bedroom suite in there any time." Krejci testified that he had this change in mind when he built their new home and included two extra bedrooms.

■ It is settled that the law favors a high degree of stability in the home and surroundings of young children and to maintain that stability "will not *permit* a change of custody, once judicially determined, except upon a showing of *materially* changed conditions * * * and will not *require* it, even then, unless denying it would constitute an abuse of discretion by the trial judge." Short v. Short, 163 Tex. 287, 354 S.W.2d 933 (1962); Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787 (1955); Mumma v. Aguirre, 364 S.W.2d 220 (Tex. Sup.Ct., 1963).

■ The final judgment in the divorce proceeding in 1963 in which custody of the children was determined is *res judi-*

*cata* of the best interests of the minors as to conditions then existing, and the material change of conditions required to authorize a change of custody must be on the part of the custodian. Bukovich v. Bukovich, 399 S.W.2d 528 (Tex.Sup.Ct., 1966); Knowles v. Grimes, 437 S.W.2d 816 (Tex.Sup.Ct. 1969) and cases there cited; see, also, 33 Tex.Bar Jour., 283, 288, and cases cited. Showing of only a slight change of conditions will not provide sufficient grounds for change of custody. Short v. Short, supra. The controlling considerations are the changes of conditions of a material nature that affect the welfare of the children. Bukovich v. Bukovich, supra.

We agree with the finding of the trial court that "there are no material changes of conditions, or circumstances" affecting the children that "looking to the best interest of said children would make it advisable to alter or change" their custody from their father to their mother.

The judgment of the trial court is affirmed.

Affirmed.

HUGHES, Justice (concurring).

I concur for the reason that I cannot say that the Trial Court abused his discretion in not awarding the mother the custody of these girls. I do say that, in my judgment, the welfare· of the girls would be better served if they were in their mother's care. I am completely satisfied that the father has done his best. I am convinced, however, that, under normal conditions, no father can care for and rear two small girls as well as their mother.

The principal change of conditions authorizing a change of custody is the growth and age of the children. They are seven years older than they were when the Court, over the protest of the mother, awarded their custody to the father. I do not minimize the need of small children for a mother's care; I emphasize the need of girls eight and ten years of age for the loving care of their mother.