**James Paul GUILLOTT, Appellant,**

v.

**Bud GENTLE et ux., Appellees.**

**No. 4458.**

Court of Civil Appeals of Texas, Eastland.

May 7, 1971.

Rehearing Denied May 28, 1971.

Akin, Stanford & Gilliland, John D. Gilliland and Richard A. Moore, Dallas, for appellant.

Gerald E. Stockard, Denton, for appellees.

McCLOUD, Chief Justice.

This is a child custody case which was instituted by appellant, James Paul Guillott, the natural father of Anna Lisa Guillott, a nine year old girl, upon petition for writ of habeas corpus against appellees, Bud Gentle and Maggie Gentle, the maternal grandparents, who asserted custody and control of the child upon the death of the child's mother. The case was tried to the court without a jury, resulting in a judgment denying the natural father's petition. James Paul Guillott, the natural father, has appealed.

The trial court found that appellant was not a fit and proper person to have the custody of his child and concluded that the best interest of Anna Lisa Guillott would be served by awarding the permanent custody and control of the child to appellees. Appellant contends there is no evidence of probative force to support the findings by the trial court that he is an unfit person to have custody of his daughter, or that the interests of the child would best be served by awarding custody to appellees. Alternatively, appellant contends that the evidence is factually insufficient to support the trial court's findings and that such findings are so against the great weight and preponderance of the evidence as to be manifestly unjust and clearly wrong.

Appellant, James Paul Guillott, was formerly married to Sally Ann Guillott. To

this union was born Anna Lisa Guillott, the nine year old child whose custody is the object of this suit. Appellees are the parents of the deceased mother, Sally Ann Guillott, and are long time residents of Sanger, Denton County, Texas. Bud Gentle has lived in Sanger all of his 70 years and is presently serving as Chief Deputy Sheriff of Denton County. Maggie Gentle has lived in Sanger for 61 years.

The marriage between appellant and Sally Ann Guillott terminated in divorce during the summer of 1969, and the custody of the child was awarded to Sally Ann Guillott. Sally Ann Guillott died February 18, 1970. Appellant learned of the death of his former wife about a week later when he called appellee, Bud Gentle, by telephone. At that time appellant lived in Shreveport, Louisiana, and he told Bud Gentle he was coming after his daughter. Bud Gentle told appellant he was not going to get her. Following this telephone conversation appellant consulted an attorney and later filed this proceeding for writ of habeas corpus in the trial court.

In Cox v. Young, 405 S.W.2d 430 (Tex. Civ.App., 1966, writ ref. n. r. e.) our Court when faced with a somewhat similar problem stated:

"In child custody cases the welfare of the child is the controlling consideration. 44 Tex.Jur.2d 43, 44. The determination of custody is within the sound and broad discretion of the District Court which will not be disturbed except in a case of clear abuse. Mumma v. Aguirre, 364 S. W.2d 220 (Tex.Sup.Ct.). There is a presumption that the interests of a young child are best served by being in custody of a parent rather than some other person. Mumma v. Aguirre, supra, and upon the death of one of the parents to whom custody has been awarded by a divorce decree, as in the instant case, the custody of the child vests automatically in the other parent. Vernon's Annotated Probate Code, Section 109(a); Knollhoff v. Norris, 152 Tex. 231, 256 S.W.

2d 79; Peacock v. Bradshaw, 145 Tex. 68, 194 S.W.2d 551. However, improper conduct of a parent may forfeit his right to custody of his child and a trial court does not abuse its discretion by awarding custody to some other person, (1) who is fit and proper, (2) if it is shown that the parent is not a fit and proper person. Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787."

■ It is not always necessary in child custody cases that the evidence show the natural parent is unfit. Our Supreme Court in Herrera v. Herrera, 409 S.W.2d 395, (Tex.Sup.1966) when confronted with such a situation said:

"The legal custody of a minor is in the parents or the surviving parent, *unless* there has been a court adjudication awarding the legal custody to a third party. Of course, a court, under certain circumstances such as the voluntary surrender of possession of the child to another coupled with continuance of such possession for a substantial period of time, may terminate the custody rights of the parent when it is in the best interest of the child to do so. Knollhoff v. Norris, supra; Legate v. Legate [87 Tex. 248, 28 S.W. 281] supra; Hendricks v. Curry, [Tex.Sup., 401 S.W.2d 796] supra; Duckworth v. Thompson (Comm'n App.), 37 S.W.2d 731 (1931), for an excellent discussion of this problem."

■ In the instant case there has been no court adjudication awarding the legal custody to the maternal grandparents nor has there been a voluntary surrender of possession of the child by the father to appellees coupled with continuance of such possession for a substantial period of time. Thus, it is essential that appellees prove that appellant, the natural father, is unfit. State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901 (1900); Garner v. Bowles, 233 S.W. 300 (Tex.Civ.App.1921, writ ref.). The trial court found him to be unfit and we must determine if the evidence supports such finding.

In Cox v. Young, supra, while discussing fitness, we said:

"The material time concerning fitness for child custody is the present. If the parent is presently a suitable person to have custody, the fact that there was a time in the past when the parent would not have been a proper person to have such custody is not controlling. 44 Tex. Jur.2d page 48. Past misconduct or neglect, such as the failure of a divorced father to make child support payments, are factors to be considered when he seeks custody after the death of the mother, but such facts are not of themselves sufficient to show present unfitness. Clements v. Schaeffer, 360 S.W.2d 906 (Tex.Civ.App., no writ history); Pettit v. Engelking, 260 S.W.2d 613 (Tex.Civ.App., n. r. e.). Even a judgment decreeing that a parent is unfit to have custody of his child is not a perpetual adjudication of unfitness."

What does the record show relative to appellant's present fitness or unfitness? At the time of trial he lived in a large lakefront home with his brother and his brother's wife and children. The house is designed so that it has a three room apartment that connects in such a way that it can all be one big house or a door can be closed to make a separate apartment. Appellant's brother, Paulin Guillott, Jr. rents the house and appellant helps with expenses. Paulin Guillott, Jr., who works as a telegraph operator, and his family had lived in the house for about a year. Appellant and his brother testified that appellant had lived there since October of 1969. Paulin Guillott, Jr. is 34 and his wife, Jo Ann Guillott is 30. They have three children, a boy 13, a daughter 6 and a daughter 4. Paulin Guillott, Jr. testified that appellant could live with him as long as he pleases. Jo Ann Guillott testified that she would be available to take care of Anna Lisa when appellant was working. She stated that she would have a child attending the same grade school that Anna Lisa would be attending and she would be available to take the children to school. Both Paulin Guillott, Jr. and Jo Ann Guillott expressed a willingness to help appellant rear his child.

Appellant is employed at a television station in Shreveport where he had been working for approximately one year. He produces and directs motion pictures and live television video tape, such as newscasts, documentaries and variety shows. At the time of trial he was receiving a salary of $135.00 a week. At times he works after hours in a related business and receives an additional $100.00 to $200.00 a month. Appellant admitted that he had had "tremendous" financial difficulties in the past; but, testified he was now making some headway in that regard. He just finished paying $500.00 in back taxes incurred during his marriage.

Concerning the unfitness of appellant, the trial court in its findings of fact found as follows:

"(6) I find that for a period beginning with the marriage of Sally Ann Guillott and Petitioner James Paul Guillott, that James Paul Guillott has not been able to provide the necessities of life for his family, and that during all of this time Bud Gentle has paid their grocery bill, paid their debts and provided the necessary things of life for Sally Ann Guillott and Anna Lisa Guillott, including in excess of $3,000.00 while they were in Atlanta, Georgia, and an additional $3500.-00 to $4,000.00 while they were in Sanger, and that beginning with a time of more than a year prior to the death of Sally Ann Guillott, that Petitioner, James Paul Guillott, deserted his family, contributed nothing to their support for more than a year's period of time, and that the only payments that he made were under compulsion by the court in a divorce action.

(7) I further find that Petitioner, James Paul Guillott, was notified in October of 1969, that Sally Ann Guillott, was con-

fined to the hospital and could not live. That Sally Ann Guillott talked with him by telephone and requested that he help support Sally Ann Guillott and the family, and that James Paul Guillott failed and refused to provide any support or to come to see his daughter or assist with her in any manner. I further find that though employed, in Shreveport, Louisiana, that from February of 1970 to the time of the trial on the 30th of July, 1970, that even though employed, James Paul Guillott had contributed to Anna Lisa Guillott the sum of $1 and some roses for her birthday."

"(9) I find that Petitioner, James Paul Guillott, is unstable in his work habits, that he drinks, that either in his regular employment or in employment he does on his own, he is and will be away from the place in which he proposes to keep Anna Lisa Guillott, nearly all, if not all of the evenings from 3:00 in the afternoon until 12:00 at night. I further find that Relator, James Paul Guillott, is single, unmarried, and until a few days before the hearings, resided in a motel room, and from observing his demeanor and his mental attitude while testifying and in observing the demeanor of his brother, Paul Guillott, Jr. and his wife, Jo Ann Guillott, with whom he is living and proposes to take Anna Lisa into their home with their three children, I find that it would be an unsuitable home and that James Paul Guillott would be an unsuitable person to have the custody of such minor child, and that such would be against the best interest of the said child to award her to the custody of the Relator."

█ Many of the findings are not supported by the record. Following the marriage of appellant and Sally Ann Guillott they moved to Atlanta, Georgia. She taught school and he worked for a television station. They lived in Atlanta three years. Bud Gentle testified that while they were living in Atlanta he sent them a little over $3,000. The record does not show how the $3,000 was used. There is no evidence that " * * * beginning with the marriage * * * Bud Gentle has paid their grocery bill, paid their debts and provided the necessary things of life for Sally Ann Guillott and Anna Lisa Guillott * * *." They moved from Atlanta back to Sanger. Mrs. Guillott was employed as a school teacher at Sanger High School. Appellee, Bud Gentle, testified that Mr. Guillott worked at " * * * first one place and the other. He worked some up at Gainesville at the hospital. And then he got a job in Dallas, He worked down there at one of those television stations, taping or something or other to that effect. And then he finally wound up, had a job going with Wallace on his presidential tour doing tape work, I think." Mr. Gentle testified that from the time they returned to Sanger until the divorce in the summer of 1969, he paid out between $3,500 and $4,000 in financial assistance to his daughter and granddaughter. Appellee, Bud Gentle, testified that prior to the divorce in 1969 appellant left his wife and during this period of time he contributed nothing to the support of his wife and daughter. Appellant testified he did what he could but he did not provide any substantial support because of what he was making at the time. There is evidence that during this period Bud Gentle paid a light bill of $385.00, telephone bill of $135.00, and a grocery bill of $400.00. Appellee, Bud Gentle, testified that all of these bills accumulated while appellant was living with his family in Sanger. Such evidence will not support the trial court's finding that from the beginning of the marriage appellant has not been able to provide the necessities of life for his family and that during all of such time Bud Gentle has paid "their grocery bill, paid their debts and provided the necessary things of life for Sally Ann Guillott and Anna Lisa Guillott".

The trial court also found " * * * beginning with a time of more than a year prior to the death of Sally Ann Guillott,

that Petitioner, James Paul Guillott, deserted his family, contributed nothing to their support for more than a year's period of time, and that the only payments that he made were under compulsion by the court in a divorce action." This finding is not supported by the record. Sally Ann Guillott died February 18, 1970. At that time appellant was behind in child support payments. He owed $60.00 for December and $240.00 for January and February. On March 1, 1970, after the death of his former wife on February 18, 1970, he paid the $300.00. Also, the record shows that at the time of the death of Sally Ann Guillott, she was included in a hospitalization insurance policy carried by appellant and that certain hospital expenses incurred by Sally Ann Guillott were paid by the policy. The record does not support the finding that appellant contributed nothing to his family for more than a year's period of time.

The trial court found in paragraph (7) of its findings that Sally Ann Guillott talked with appellant by telephone and " * * * requested that he help support Sally Ann Guillott and the family, and that James Paul Guillott failed and refused to provide any support * * *" The testimony of appellee, Bud Gentle, as to what his daughter told him at the hospital is hearsay. There is no competent evidence of probative force to support the finding. Knapik v. Edison Bros., Inc., 313 S.W.2d 335 (Tex.Civ.App.1958, writ ref.).

Also in paragraph (7) the trial court found that from February of 1970 (death of mother) to the time of trial on July 30, 1970, appellant had contributed to Anna Lisa Guillott the sum of $1.00 and some roses. The record shows that on Anna Lisa's 9th birthday her father sent her $1.00 and a dozen roses. Appellee, Bud Gentle, testified that he didn't ask appellant for any support. What type of financial assistance should a father provide when a third party has possession of the father's child and has refused to give possession to the father? It is an awkward situation.

The record shows appellant did not come to the home of appellees during this period of time to visit his child but that he tried to talk with her by telephone at least once a week.

In paragraph (9) the trial court found among other things that appellant drinks. There is some evidence that he does drink, but there is no evidence, and the court did not find, that drinking alcohol has ever in the past created a problem for appellant or his family. There is no evidence to support the finding that appellant, because of his work, will be away from the home "nearly all, if not all, of the evenings from 3:00 in the afternoon until 12:00 at night". Also, there is no evidence to support the finding that appellant "until a few days before the hearing, resided in a motel room".

The main thrust of testimony presented by appellees centers around the financial instability of appellant which was experienced during his marriage with the now deceased mother; that he moved from one job to another, was a poor provider and it was necessary that appellees support his wife and child. The record reflects that appellant in the past has had financial problems. The record does not adequately reflect the nature of these problems. It cannot be ascertained with any degree of certainty whether the financial problems resulted from poor judgment, chronic unemployment, overspending, bad investments or excessive personal habits.

In De Llano v. Moran, 160 Tex. 490, 333 S.W.2d 359 (1960), while discussing a father's financial traits, the court stated:

"He is inclined to be improvident and apparently has never developed a mature sense of his responsibilities either as a husband or a father. Unless there is an increase in his earnings, he will not be able to provide a home for the child. Although his father already supports some eight people on an income of about $500 a month, respondent expects his parents to rear the child for him and

contribute to her support. We agree with the Court of Civil Appeals that these circumstances in themselves do not show that respondent is unfit to be entrusted with the custody and care of his daughter * * *"

The court in De Llano v. Moran, supra, found the father unfit, but because of additional facts such as: (1) throughout the marriage he drank to excess and frequently came home drunk; (2) he drove fast and ran red lights when drunk; (3) he thought he was capable of driving after having had eight or ten bottles of beer; (4) after having had several bottles of beer and a number of mixed drinks he ran into the side of a freight train at a public crossing without ever seeing the train; (5) this was the incident in which his wife lost her life; (6) following his marriage he visited the red light district of Nuevo Laredo a number of times and regarded this as natural; (7) he stayed out late at night without letting his wife know where he was, and on one occasion left her and the child for a period of over two months.

The evidence in the instant case shows that appellees, Bud Gentle and Maggie Gentle, the maternal grandparents, have provided suitable surroundings for the child during the time preceding the trial and that there is mutual love and affection between the grandparents and their granddaughter. The record reflects that the grandparents are kind and generous. They are fit and suitable persons to be awarded custody of their granddaughter, but this fact alone will not justify nor authorize a court to deprive a parent of the custody of his child. Mecke v. Grubbs, 278 S.W.2d 404 (Tex.Civ.App., writ ref. n. r. e., 1954).

We are mindful that in this type of case the judgment of the trial judge should be reversed only when it appears from the record as a whole that he has abused his discretion. Mumma v. Aguirre, 364 S.W. 2d 220 (Tex.Sup.1963). However, the discretion rightly given the trial court in child custody matters is not absolute or limitless.

In State ex rel. Wood v. Deaton, supra, our Supreme Court quoted with approval the following statement from State v. Richardson, 40 N.H. 272, 275:

" * * * in the absence of any positive disqualification of the father for the proper discharge of his parental duties, he has, as it seems to us, a paramount right to the custody of his infant child, which no court is at liberty to disregard. And while we are bound also to regard the permanent interests and welfare of the child, it is to be presumed that its interests and welfare will be best promoted by continuing that guardianship which the law has provided, until it is made plainly to appear that the father is no longer worthy of the trust. People v. Mercein, 25 Wend. 72. The breaking of the ties which bind the father and the child can never be justified without the most solid and substantial reasons. Upon the father the child must mainly depend for support, education and advancement in life, and as security for this he has the obligation of law as well as the promptings of that parental affection which rarely fails to bring into the service of the child the best energies and the most thoughtful care of the father. In any form of proceeding the sundering of these ties will always be approached by the courts with great caution, and with a deep sense of responsibility."

We hold there is no probative evidence to support the finding by the trial court that appellant is unfit and the trial court abused his discretion in awarding permanent custody of the child to appellees.

The judgment is reversed and judgment here rendered awarding the care, custody and control of Anna Lisa Guillott to her father, James Paul Guillott.