Victor **HERRERA** and wife, Margarita Herrera, Petitioners,

v.

Anita B. **HERRERA**, Respondent.

No. A–11502.

Supreme Court of Texas.

Dec. 7, 1966.

Stovall & Stovall, Plainview, for petitioners.

John J. Herrera, Houston, John B. Stapleton, Floydada, Philip M. Shafer, Houston, for respondent.

GRIFFIN, Justice.

This is a child custody suit in the District Court of Floyd County, Texas. Relator, Anita B. Herrera, the mother of Johnny Herrera, filed a habeas corpus proceeding alleging that Respondents Victor Herrera and wife, Margarita Herrera, the paternal grandparents, were illegally confining and restraining Johnny Herrera of his liberty. Anita further alleged that no court order had ever been entered depriving her of custody of her child and that she had not voluntarily surrendered the care or custody of the child to anyone. A hearing was had before the court without a jury, and after such hearing the trial court found that Anita Herrera and Victor Herrera and his wife, Margarita, were each a fit and proper person to be awarded the custody of Johnny. The court further found " * * * based upon the evidence produced in this cause, and the circumstances of this particular case, it is for the best interest and welfare of the minor, Johnny Herrera, that his custody be placed with the respondents, Victor and Margarita Herrera," subject to the right of reasonable visitation in Anita.

Anita appealed to the Court of Civil Appeals, and that court reversed the trial court's judgment and awarded custody of Johnny to his mother, Anita. 402 S.W.2d 782. The Court of Civil Appeals said that as a matter of law Anita was entitled to the custody of Johnny because she was his natural mother, and the trial court found that she was a fit and proper person to have custody of him and found nothing disqualifying her. The grandparents are the petitioners for writ of error in this Court.

We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

■ When Anita filed her application for writ of habeas corpus and had the child, Johnny, brought before the court on the writ, the court took jurisdiction of the person of the minor to adjudicate his custody. Mumma v. Aguirre, Tex.Sup., 364 S.W.2d 220, 221 (1963); Knollhoff v. Norris, 152 Tex. 231, 256 S.W.2d 79, 81–82 (1953); Legate v. Legate, 87 Tex. 248, 28 S.W. 281 (1894); Davis v. Sears (Comm'n App., 1931), 35 S.W.2d 99; Hendricks v. Curry, Tex.Sup., 401 S.W.2d 796, 802 (1966).

■■ The legal custody of a minor is in the parents or the surviving parent, *unless* there has been a court adjudication awarding the legal custody to a third party. Of course, a court, under certain circumstances such as the voluntary surrender of possession of the child to another coupled with continuance of such possession for a substantial period of time, may terminate the custody rights of the parent when it is in the best interest of the child to do so. Knollhoff v. Norris, supra; Legate v. Legate, supra; Hendricks v. Curry, supra; Duckworth v. Thompson (Comm'n App.), 37 S.W.2d 731 (1931), for an excellent discussion of this problem.

■■ There is a presumption that the interests of a minor are best served by award of its custody to its natural parents. The burden of proof upon the issue of the best interest of the child is upon the one seeking to deprive the natural parents of custody. Gunn v. Cavanaugh, Tex.Sup., 391 S.W.2d 723, 726 (1965); Mumma v. Aguirre, supra; Taylor v. Meek, 154 Tex. 305, 306, 276 S.W.2d 787, 789 (1955).

■ The trial court's judgment in determining the best interests of the child and in awarding its custody in accordance with this determination "should be reversed only when it appears from the record as a whole that he has abused the discretion entrusted to him." Mumma v. Aguirre, supra; DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687, 694–695 (1944); Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787, 791 (1955).

Petitioners Margarita and Victor Herrera assign error to the holding of the Court of Civil Appeals that as a matter of law the mother, Anita Herrera, is entitled to the custody of her child, Johnny, because the trial court affirmatively found Anita to be a fit and proper person to have custody of Johnny. They also assert that the trial court did not abuse its discretion in awarding custody of Johnny to Margarita and Victor. Anita, as respondent, asserts by counter-point of error that there is no evidence to support the trial court's judgment, and that the trial court abused its discretion by the judgment entered.

Margarita Herrera, the grandmother, testified through an interpreter, to the following events surrounding her physical possession of Johnny. The natural parents, Jesse and Anita, told Margarita before the baby was born that she could have it. When the baby, Johnny, was two months old she took him into her home, near Plainview, at the request of the parents and he has lived there at all times since. The parents also stayed in the home a month, but Jesse was then sent to the penitentiary. Anita, with her daughter, went to Wharton to live with Anita's parents. Jesse was in and out of the penitentiary until two or three months prior to an industrial accident near Alpine, Texas, on February 22, 1965, in which he was injured and from which he died on February 24, 1965. This was almost eight years after he and Anita left the child with Margarita. During this time Anita neither visited nor wrote to Johnny or his grandparents.

Margarita testified further that about three years prior to Jesse's death Anita filed suit for divorce and custody of the children. At this time Jesse was in the penitentiary, and Anita was still living with her parents in Wharton. Anita telephoned Margarita and asked for the return of Johnny. This prompted Margarita to go to Wharton to get Anita to give written consent for Johnny's adoption. Anita's father, in the presence of Anita, said it wasn't necessary to sign any papers, and she signed none. During the period of events described above neither of the natural parents contributed to the support of Johnny.

Anita Herrera, also testifying through an interpreter, gave her version of the events as follows. She did not give the baby to his grandparents, rather she and Jesse agreed that the grandparents should keep the child while Jesse was in the penitentiary. The purpose of the agreement was to ease the support problem of Anita and her children. In the event of Jesse's death she was to take the child from the grandparents (she did not testify that the grandparents were parties to the agreement or knew of its existence). Anita said that she had received an award from the Industrial Accident Board as a result of Jesse's death and she is now able to support and educate Johnny. She also said she did not visit Johnny until May 1965, because prior thereto she did not have the money to make the trip. In May 1965, she, along with an attorney and witness at the trial, Guadalupe Torres, went from Houston, her present home, to Johnny's school in Floydada and talked with Johnny. Johnny did not know her and said that his grandparents told him his mother and father were dead. She asked Johnny to come live with her and his two sisters, but he would not agree to this.

A consideration of the two environments involved is now in order. Guadalupe Torres testified to the type of home offered by Anita. Guadalupe lives with Anita and her two daughters in Houston. Guadalupe's grandmother also lives with them and takes care of the children while Guadalupe and Anita are at work. Guadalupe and Anita have jobs in a Houston factory at a wage of $1.25 per hour. The children are well dressed, well cared for, and are enrolled in a school in Houston in which they attend English-speaking classes.

The environment offered by the grandparents was testified to by Margarita and several school officials from the school which Johnny attends. Margarita said that she, her husband, and Johnny live in a

three-room house on a farm in Floyd County. Next door to them lives Margarita's married son and his family. The married son has three young children to whom Johnny has become very attached and who provide companionship for Johnny. Mr. Herrera works as a farm hand when work is available and he also gets a government pension. Mr. Herrera is sixty-seven years of age and Mrs. Herrera is sixty. None of the Herrera children completed their secondary education, but Johnny is now enrolled in school and enjoys his school work. The Herreras plan to send him at least through high school.

The room mother for Johnny's home room, Mrs. Battey, testified that as a result of her work with the school children she had become well acquainted with Johnny. She said that he is a well behaved young boy who is socially well-adjusted. His disposition reflects good rearing, parental care, and family love. The only time she has seen Johnny act belligerent or ill-adjusted was after his mother had visited Johnny at school in May, 1965. Prior to that visit Johnny had been very affectionate, but since his mother's visit Johnny has been withdrawn.

The assistant superintendent of the school, Mr. Copeland, testified that he has never had any problems with Johnny. Johnny is in a class of Spanish-speaking students because of his inability to readily read, write, or speak English, but he is a well-adjusted boy, a leader of his class and an outstanding student with a good scholastic record. Mr. Copeland further testified that the day the mother came to school to see Johnny she did not know him and asked that he be pointed out to ·her. When she told Johnny that she was his mother he said, "This is not my mother. I do not want to go with her. She threw me down."

The principal of the school, Mr. Nicholson, testified similarly concerning Johnny's character and quality of work. In addition he said Johnny had been very upset and was crying after his mother's visit. The mother said she would be back when school was out that day to take Johnny to his grandmother, but Johnny did not want to go with his mother and was creating such a disturbance that his grandmother had to be called.

In the early case of Legate v. Legate, 87 Tex. 248, 28 S.W. 281 (1894), this Court in deciding a child custody case, said:

"* * * The one most vitally interested, however, in its custody, during the formative period of its character, is the one whose present and future happiness and tendencies towards good or evil will be most affected by its early environments, and its physical, mental, and moral training,—the child itself. The right of the parent or the state to surround the child with proper influences is of a governmental nature, while the right of the child to be surrounded by such influences as will best promote its physical, mental, and moral development is an inherent right, of which, when once acquired, it cannot be lawfully deprived. Ordinarily, the law presumes that the best interest of the child will be subserved by allowing it to remain in the custody of the parents, no matter how poor and humble they may be, though wealth and wordly advancement may be offered in the home of another. *Where, however, a parent, by writing or otherwise, has voluntarily transferred and delivered his minor child into the custody and under the control of another,* as in the case at bar, *and then seeks to recover possession of the child by writ of habeas corpus, such parent is invoking the exercise of the equitable discretion of the court to disrupt private domestic relations which he has voluntarily brought about, and the court will not grant the relief unless, upon a hearing of all the facts, it is of the opinion that the best interest of the child would be promoted thereby."*

"* * *

"* * * We hold, as a matter of law, that it [the child] is entitled to the benefit of that home and environments which

will probably best promote the interest of the infant. The question as to whose custody will be most beneficial to the infant is one of fact, of which this court has no jurisdiction, but which is to be determined in the first instance by the district court, upon hearing all the evidence tending to shed any light upon these two homes * * * in order that the court may be enabled to determine, upon the whole case, the difficult question of the fact above stated."

This rule of law in child custody cases is of long standing. One of the latest expressions of this rule is found in Mumma v. Aguirre, Tex.Sup., 364 S.W.2d 220, 222 (1963), where we said:

"It is in situations with such conflicting considerations that the trial judge must be accorded the right to exercise a large measure of discretion in denying a change of custody of a child. He has an opportunity to observe and evaluate the personalities of the contending claimants, to weigh the credibility of their testimony, to assess the physical, mental, moral and emotional needs of the child, and to adjudge from personal observation which of the claimants can best meet the needs of the child. His judgment should be reversed only when it appears from the record as a whole that he has abused the discretion entrusted to him."

See also Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787 (1955); DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687, 694-5 (1944).

This Court in the recent case of Hendricks v. Curry, Tex.Sup., 401 S.W.2d 796 (1966), again recognized the right of the trial court to determine custody as between the natural mother and third parties. In that case the mother had given written consent for adoption of the child by the

Currys. This consent was given at the birth of the child but was not final until the expiration of six months. Prior to the end of the six-months period the mother withdrew her consent and demanded her child. The Currys had the child adjudged dependent and neglected and with this judgment procured a district court judgment of adoption. No notice of the dependent and neglect proceeding was given the mother. On the mother's appeal in a habeas corpus proceeding, and also a proceeding to set aside the judgment of dependency and neglect and the adoption decree, this Court held both proceedings void as far as the mother's rights were concerned, but severed these matters from the custody hearing and remanded the custody hearing to the district court to determine the best interests of the child.

In the present case Anita has permitted Johnny to remain in the family of Margarita and Victor since he was two or three months old. She has permitted Johnny to form family relationships and ties with his paternal grandparents. She has permitted him to grow up without contact with his two sisters while at the same time establishing family ties with his three cousins who live next door to him. During this entire period Anita has neither contributed to his support nor visited him.

In determining the question of whether the trial court abused its discretion in awarding custody to the grandparents we have considered the whole record. We hold that in awarding the custody of Johnny to Margarita and Victor Herrera, the trial judge did not abuse his discretion.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court awarding custody of Johnny Herrera to Victor and Margarita Herrera is affirmed.