Jamie Michelle Weaver **GARNER,**
Appellant,

v.

Daniel Ray **GARNER, et al., Appellee.**

No. 2–84–045–CV.

Court of Appeals of Texas,
Fort Worth.

July 11, 1984.

Robert J. Wilson & Associates, Inc., Burleson, for appellant.

Raymond M. Meeks, Mansfield, for appellee.

Before HUGHES, JOE SPURLOCK, II and HILL, JJ.

## OPINION

HUGHES, Justice.

Jamie Michelle Weaver Garner has appealed the judgment of the trial court which awarded the custody of the minor son of Mrs. Garner to Lavaughn and George Armstrong, the paternal grandparents.

We affirm.

The basis of this appeal as urged by Mrs. Garner in her appellant's brief is abuse of discretion on the part of the trial judge in awarding custody to the Armstrongs. There are nineteen points of error urged by Mrs. Garner in an effort to prove such abuse.

The testimony gleaned from the twelve volume statement of facts reflects sufficient evidence to support the judgment of the trial court. There was sufficient testimony introduced not only to show that the best interest of the child would be served by appointing the Armstrongs managing conservators but also that it would not be to the best interest of the child to place the managing conservatorship with Mrs. Garner.

Of prime importance in considering custody of a child is a stable environment. Much of the testimony reflects that Mrs. Garner does not have a good record in this respect. Her history shows her to have had constant quarrels with her mother; moving in; moving out; going to a neigh-

bor's house with the child to escape her mother; calling the police from time to time on quarrels with her mother. Further, it was shown she lived in her automobile for a period of time and lost her job because she was unable to dress properly due to lack of living facilities. Also, she lived with a man for a period of time, then broke the relationship. (During this time the child was with her mother, about whom there was testimony which could be viewed as unfavorable as to her having custody.) Unable to afford other arrangements, Mrs. Garner moved in with her inamorato's brother who was kind enough to give her a room in his house until she could find a place for herself. By her own admission, she is still undecided about the boyfriend and still sees him from time to time.

Mrs. Garner testified about two different apartments she was contemplating leasing to provide a home for her son and the financial arrangements therefor out of her $900.00 a month job. Her uncertainty about the cost of babysitting arrangements and of other expenses could well have caused the trial court to decide that she was not in a stable enough situation to provide a proper home for her son. He could well have reasoned that she would have to go back to her mother who, by her testimony, had always slapped her around, who had odd notions about being a medical doctor and who (according to some testimony) made questionable diagnoses about the child's health.

The parents of Mrs. Garner were the original intervenors in this divorce suit when they sought custody of the child against the wishes of Mrs. Garner. After extensive testimony seeking to establish their case, they withdrew from the contest and left it to be decided between the two remaining sides—the child's father not being in contention.

Daniel Ray Garner, the child's father, was injured when his motorcycle collided with a truck. He is an invalid living with his parents and unable to work due to deep brain injuries. He and Mrs. Garner had just left her parent's house when the acci-

dent occurred. She was in the automobile with the child and driving behind him when she saw the collision. They have not lived together since. This divorce suit followed after several months of his hospital time and later his living with his parents.

Mr. Garner has very hostile feelings toward Jamie Garner's mother. It was her slapping him in the kitchen of her home (where the Garners had temporary residence during financial reverses) that drove him out of the house in a high dudgeon and caused him to take his family with him. The slap followed an argument with his mother-in-law over his feeding the child. The motorcycle accident occurred immediately after the precipitate flight from the Weaver house.

After the accident Mr. and Mrs. Weaver took over the care of the child while Mrs. Garner, by her own definition, moved in with her inamorato so she could collect herself and "get it all together." Somewhere in an exchange of visits between the two sets of grandparents, the child acquired numerous bruises on his legs. Mrs. Weaver said the bruises were acquired while at the Armstrong's; Mrs. Armstrong said they were acquired before the child came to her house. The doctor who examined the boy said the bruises appeared to have been made by "pinches." The trier of the fact had to decide who to believe on this and other controverted matters in the case. It is not for us to disturb his decision.

There was a lot of testimony elicited about the Armstrong's twelve-year-old son, Bryan, who lives with his parents in the Armstrong home. The testimony and medical and school records reflect that Bryan had problems in the fifth grade in school as well as at home. He was described as being "hyperactive", aggressive and not easy to discipline. Mrs. Garner urges that it is not to the interest of her three-year-old son to live in the same house with Bryan, who, in the fifth grade, went around hitting his classmates, seeking attention. Some testimony was that the hits were more like attention-seeking shoves.

The much complained-of caseworker, John P. Gaddis, recommended the Armstrongs for appointment as managing conservators. B.C. Cornish, the court-appointed attorney ad litem for the child, also recommended the Armstrongs.

By points of error one through four, Mrs. Garner asserts abuse of discretion by the trial court in making the Armstrongs managing conservators of the minor child and in not making Mrs. Garner managing conservator. The complaint is that Mrs. Garner's rights as natural mother were ignored and that she was not proven unfit. Further, the presence of the older child with problems in the Armstrong house made conditions that were not conducive to the physical and emotional health of Jason.

Had the Texas Family Code not been passed, Mrs. Garner's first four points of error would have been urged on a much better basis. The fact remains it *was* enacted into law and in its establishment, the "tender years" doctrine and the mandatory finding of unfitness in a parent were eliminated as mandatory elements in determining custody. Mrs. Garner cites only cases which pre-date the Family Code. The trial court had the authority to award custody of the child as was done here. The best interest of the child is the criterion (whether the parents are unfit or not). *Smitheal v. Smitheal,* 518 S.W.2d 842, 844 (Tex.Civ.App.—Fort Worth) *cert. denied,* 423 U.S. 928, 96 S.Ct. 277, 46 L.Ed.2d 256 (1975). TEX.FAM.CODE ANN. sec. 14.01 (Vernon 1975) provides that a parent shall be appointed managing conservator unless the court finds that the appointment would not be in the best interest of the child. There is a presumption that the interests of a minor are best served by award of its custody to its natural parents. *Herrera v. Herrera,* 409 S.W.2d 395 (Tex.1966); *Mumma v. Aguirre,* 364 S.W.2d 220, 221 (Tex. 1963). Thus, the burden of proof upon the issue of the best interest of the child is upon the one seeking to deprive the natural parent of custody. *Herrera, supra,* at 396; *Yancey v. Koonce,* 645 S.W.2d 861, 863 (Tex.App.—El Paso 1983, writ ref'd n.r.e.).

However, the trial court's judgment in determining the best interests of the child and in awarding custody in accordance with this determination should be reversed only when it appears from the record as a whole that the court has abused the discretion entrusted to him. *Herrera, supra,* at 396.

■ Petitioner's exhibits 1, 2, 3, 4 and 4a were offered by Mrs. Garner and admitted by the trial court for a limited purpose in connection with her motion for mistrial and not for truth of the matter stated in them. Such exhibits included reports from a medical doctor and from school authorities which indicated that Mrs. Armstrong's thirteen-year-old son had behavioral problems in school both with reference to grades and his belligerence toward his classmates. His belligerence was indicated to be exhibited in a crowd and not in a one-on-one situation with another child. However, although not in evidence for their probative force, the information in such exhibits must have given the trial court pause. Mrs. Armstrong's testimony, the only direct evidence on the thirteen-year-old's propensities, identified his problem as hyperactivity. She also testified that he had improved over the past two years.

We are not able to say that the trial court abused its discretion. We overrule points of error one through four.

■ We also overrule point of error five wherein Mrs. Garner asserts that the trial court should have granted the motion for mistrial based on the discovery during the trial that only the judge had photocopies of medical, psychological and police reports in the social study record and the attorney's copies of such social study did not have such photocopies.

Inasmuch as the trial judge immediately made the reports available to all attorneys when their lack of same was revealed, we hold the court did not err in refusing to grant a mistrial. There appears to be no precedent to justify Mrs. Garner's contention.

■ Points of error six through nine complain of the trial court's refusal to have marked and to admit into evidence for all purposes Petitioner's exhibits 1, 2, 3, 4 and 4a. The items were marked the next day after Mrs. Garner's attorney requested their marking. She complains of the delay in marking and in the trial court's refusal to admit them for the truth of what they stated. Mrs. Garner did not lay a predicate for admission of these exhibits for the truth of what they stated and the court did not err in its refusal. We overrule points of error six through nine.

■ Point of error ten is also overruled. The trial court does have discretion in assessing qualification of expert witnesses and the trial court in this case did not abuse its discretion in finding John Gaddis an expert in the field of social work and in accepting his testimony on the time frame of the bruises on Jason Garner. His testimony on the time frame would not come under the heading of expert testimony because Mr. Gaddis was only testifying to what he saw and when as well as the time the child's visitation with the Armstrongs was set.

■ We likewise overrule point of error eleven which asserts that the trial court should not have allowed B.C. Cornish, the guardian ad litem for Jason, to make a recommendation to the court with respect to the appointment of a managing conservator. We only say that the trial court was well within its discretion in accepting such recommendation.

Point of error twelve is overruled.

Mrs. Garner complains of her Petitioner's exhibit 5 not being admitted into evidence. Exhibit 5 was a copy of Bryan Armstrong's report card. It contained hearsay. No sufficient predicate was laid. Witnesses could not identify it. No proof of authenticity was offered.

■ We are disturbed by the assertion of Mrs. Garner that she was denied due process by the trial judge when he ordered the court reporter not to record statements by Mrs. Garner's attorney to the effect that she was willing to have her residence

inspected by the welfare investigators in order to promote her contentions for custody. If the court was in session when such order to not record was issued, we would, perforce, be required to rule it to be a serious error. The right to a record during trial is not to be treated lightly nor disputed and we cannot envision a judge denying a party the same. We have no testimony before us regarding the status of the proceedings, in regard to whether the trial court was in recess or not. The Armstrong's brief asserts that the court had recessed before the statement of Mrs. Garner's attorney was offered to the court reporter and that the judge was not on the bench. Mrs. Garner's brief simply asserts that the statement was offered and the judge ordered the reporter not to take it. We do not have an official record of what transpired, neither do we have a bystander's bill. We, therefore, have no alternative other than to overrule point of error thirteen.

■ We overrule point of error fourteen and hold that the trial court did not err in refusing to order a caseworker visit to Mrs. Garner's residence in the middle of the trial, particularly, as Mr. Gaddis had attempted to arrange such a visit some two weeks before trial and was told by Mrs. Garner that she was in transit and did not have a home to visit.

■ Point of error fifteen is overruled because the trial court, in its discretion, was not required to order further investigation by the Family Court Services in the middle of the trial. Petitioner's exhibits 1, 2, 3, 4 and 4a were already in the social study on file.

■ Point of error sixteen complains of the trial court's action in entering modified temporary orders of custody on the date in the middle of the trial when the Weavers withdrew from the case. We hold this to be a moot matter, superseded by the final order on which we have already ruled. We overrule point of error sixteen.

■ In view of our rulings heretofore upholding the trial court's placing of the managing conservatorship in the Arm-

strongs, we overrule point of error seventeen. Point of error seventeen asserts that the trial court should not have ordered Mrs. Garner to turn over accumulated Social Security benefits of Jason (as well as future benefits) to the Armstrongs. There is no question that the funds are for the use and benefit of Jason. They were properly placed by the trial court with the named managing conservators, the Armstrongs.

■ We overrule point of error eighteen which complains of attorney's fees being allowed the Armstrongs and assessed against Mrs. Garner and the Weavers. TEX.FAM.CODE ANN. sec. 11.18(a) (Vernon 1975), allows the assessment of reasonable attorney's fees to be taxed as costs in parent-child relationship suits. Although the Armstrongs did not initially plead for attorney's fees, they amended their pleadings with leave of the court to ask for such. The court, in its discretion, granted such fees and we will not interfere with such discretion.

Point of error nineteen, which we overrule, goes back into the trial court's refusal to order further investigation of Mrs. Garner's residence, a point upon which we have already ruled. The trial court did not err in denying a mistrial at the close of testimony in this case.

Affirmed.