Rowoldt v. Rowoldt 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-234-CV





JOHN LOUIS ROWOLDT,



 APPELLANT


vs.





JUDY LYN ROWOLDT,



 APPELLEE



 




FROM THE DISTRICT COURT OF RUNNELS COUNTY, 119TH JUDICIAL DISTRICT



NO. 11,198, HONORABLE JOHN E. SUTTON, JUDGE PRESIDING



 




 John Louis Rowoldt, appellant, and Judy Lyn Rowoldt, appellee, were divorced
on February 14, 1991. Appellee was appointed managing conservator of the couple's three minor
daughters. Appellant brings twenty-four points of error complaining generally of appellee's
appointment as managing conservator. We affirm.



FAILURE TO CONFER WITH CHILD


 A bench trial was held on September 5, 1990, at which the only contested issue was
the appointment of managing conservator. Thereafter, appellant moved to reopen to present
newly discovered evidence that appellee had been caught shoplifting and that Randall Goodgion
had regularly spent the night at her house while the children were present. The motion to reopen
was granted on November 20, 1990, and a hearing set for January 10, 1991. At appellant's
request, the hearing was continued until February 7, 1991.

 On November 30, 1990, appellant, by written motion, requested that the trial judge
confer with the couple's oldest daughter, who would turn twelve-years-old on January 15, 1991. 
The trial judge reluctantly agreed to do so, limiting the discussion to matters within the scope of
the motion to reopen. However, the conference never took place because the child was not
available to confer with the judge at the time of the hearing. The trial judge refused a continuance
for this purpose.

 In point of error one appellant asserts that the trial court committed reversible error
by refusing to interview the child. Appellant relies on the Texas Family Code section which
provides:



(c) In a nonjury trial the court may interview the child in chambers to ascertain the
child's wishes as to his conservator. Upon the application of any party and when
the issue of managing conservatorship is contested, the court shall confer with a
child 12 years of age or older . . . .



Tex. Fam. Code Ann. § 14.07(c) (1986) (emphasis added). Appellant argues that the mandatory
language of section 14.07(c) applies to this case, citing Hamilton v. Hamilton, 592 S.W.2d 87,
88 (Tex. Civ. App. 1979, no writ). Without discussion, we note that the circumstances of this
case differ in many respects from those in Hamilton. We need not decide, however, whether
those differences distinguish this case. At the hearing appellant did not object to the court's
action. Consequently, the error, if any, was not preserved for review. Tex. R. App. P. Ann.
52(a) (Pamph. 1992); see also Fettig v. Fettig, 619 S.W.2d 262, 268 (Tex. Civ. App. 1981, no
writ); Wilkinson v. Evans, 515 S.W.2d 734 (Tex. Civ. App. 1974, writ ref'd n.r.e.). Appellant's
first point of error is overruled.



MOTION FOR NEW TRIAL


 In points of error two and three appellant complains that the trial court committed
reversible error by failing to conduct a hearing on appellant's motion for new trial and by failing
to grant the motion. The record shows that appellant timely moved for a new trial claiming that
appellee's appointment as managing conservator was not in the best interests of the children
because: (1) appellee was an admitted thief; (2) before the divorce appellee was allowing Randall
Goodgion to stay in her home overnight with the children present and she continued to do so in
defiance of a court order; (3) Goodgion had taken over discipline of the children; (4) the children
do not like Goodgion, are unhappy, confused and emotionally upset by his presence in their home;
and (5) appellee's conduct does not meet community standards of morality.

 A hearing on the motion for new trial was scheduled for April 11, 1991. Both
counsel asked that the hearing be rescheduled because of conflicting schedules. Appellant never
obtained a setting and his motion for new trial was overruled by operation of law.

 Appellant's second point, complaining of the trial court's failure to hold a hearing
on his motion for new trial, is without merit; the opportunity for a hearing on a motion for new
trial is not mandatory. See Scott v. Scott, 774 S.W.2d 307 (Tex. App. 1989, no writ); Parham
v. Wilbon, 746 S.W.2d 347, 351 (Tex. App. 1988, no writ); 4 Roy W. McDonald, Texas Civil
Practice in District and County Court § 18.03 at 266 (rev. ed. 1981).

 Neither do we find that the trial court abused its discretion in overruling the motion
for new trial. The granting or denial of a new trial is within the discretion of the trial court and
will not be disturbed on appeal absent an abuse of discretion. Jackson v. Van Winkle, 660 S.W.2d
807, 809 (Tex. 1983). Ordinarily, the movant for new trial on the basis of newly discovered
evidence must satisfy the court that he acquired knowledge of the existence of new evidence since
trial; that it was not owing to want of diligence that such evidence was not discovered and
obtained in time to be used at trial; that the new evidence was material and not merely cumulative;
and that it would probably change the result upon another trial. Id.

 Appellant cites C. v. C., 534 S.W.2d 359 (Tex. Civ. App. 1976, writ dism'd), to
support his position that ordinary rules restricting the granting of a new trial for newly discovered
evidence should not be applied rigidly in child custody cases because the primary concern is the
best interests of the children. The court in C. v. C. held that "in an extreme case, if the evidence
is sufficiently strong, failure to grant the motion may be an abuse of discretion." Id. at 361. We
agree. However, the court in C. v. C. also states:



Our holding in this case should not be interpreted as meaning that the court must
grant a new trial whenever the losing party brings forth new evidence bearing on
the issue of the best interests of the children. No abuse of discretion is shown
unless the evidence presented in support of the motion, and not offered at the
original trial, strongly shows that the original custody order would have a
seriously adverse effect on the interest and welfare of the children, and that
presentation of such evidence at another trial would probably change the result.



Id. at 362 (emphasis added).

 We conclude that the allegations presented in appellant's motion for new trial are
not of that character. Most of appellant's allegations as grounds for new trial are not new;
evidence of appellee's theft problem and of her allowing Goodgion to spend the night was
presented at the hearing on new evidence. Allegations of the children's feelings about Goodgion
and that Appellee's conduct does not meet community standards of morality are merely cumulative
of evidence already presented at trial and are unlikely to change the result. The remaining
allegations are unsubstantiated. A motion for new trial must be supported by affidavit containing
competent evidence. Fulton v. Duhaime, 525 S.W.2d 62, 64 (Tex. Civ. App. 1975, writ ref'd
n.r.e.). Statements in the motion as to the grounds for new trial are not evidence of the matters
alleged. Associated Employers Lloyds v. Wynn, 230 S.W.2d 838, 839 (Tex. Civ. App. 1950, no
writ). Finally, appellant's allegations regarding Goodgion's continuing overnight visits concern
enforcement of the decree rather than offering grounds for new trial as newly discovered
evidence. See Fettig, 619 S.W.2d at 267.

 We conclude that the trial judge did not commit error by failing to hear or grant
appellant's motion for new trial. Points of error two and three are overruled.



CHILD SUPPORT DECREE


 In point of error four appellant complains that the trial court committed reversible
error by failing to provide for partial termination of his support obligation as the children reach
the age of eighteen years as provided by the family code:



(d) Partial Termination of Support Obligation. A child support order that provides
for the termination of the support for one child because a child reaches the age of
majority, graduates from high school, or for some other reason, but continues the
support for another child must establish a level of support for the remaining child
or children in accordance with these guidelines.



Tex. Fam. Code Ann. § 14.055(d) (Supp. 1992). We overrule this point. The guidelines do not
mandate a prospective reduction order. The purpose of this section is to prevent a proportionate
reduction as each child reaches majority or graduates from high school by requiring that the
reduction, if ordered, be in accordance with the guidelines. See John J. Sampson, Chapter 14.
Conservatorship, Possession, and Support of Children, 21 Tex. Tech L. Rev. 1323, 1385 (1990).



STANDARD POSSESSION ORDER


 In points of error six and twenty-four appellant complains of the trial court's failure
to order the family code's standard possession terms. See Tex. Fam. Code Ann. § 14.033 (Supp.
1992). Appellant's complaint is directed to sections of the statutory Standard Possession Order
which give the possessory conservator (1) the right to possession of the child "on Wednesday of
each week during the regular school term from 6 p.m. until 8 p.m.," § 14.033(c)(2); (2) the right
to birthday visitation, § 14.033(3)(8); and (3) the right of summer visitation as follows:



[I]f the possessory conservator:


 (A) gives the managing conservator written notice by May 1 of each year
specifying an extended period or periods of summer possession, the possessory
conservator shall have possession of the child for 30 days between June 1 and
August 31, to be exercised in no more than two separate periods of at least seven
consecutive days each; or

 (B) does not give the managing conservator written notice by May 1 of each
year specifying an extended period or periods of summer possession, the
possessory conservator shall have possession of the child for 30 consecutive days
beginning at 6 p.m. on July 1 and ending at 6 p.m. on July 31;



Tex. Fam. Code Ann. § 14.033(e)(5) (Supp. 1992).

 The trial court's order omits Wednesday night and birthday visits, and it provides
two fifteen-day periods of summer visitation contingent upon written notice. Appellant complains
that the court erred in deviating from the statutory Standard Possession Order without finding that
the standard order would be "unworkable or inappropriate," as required by Family Code §
14.033(k). Further, he claims no evidence or insufficient evidence would support such a finding
if made.

 Section 14.033(k) creates a rebuttable presumption that the standard possession
order establishes "reasonable minimum possession of a child for a parent named as a possessory
conservator and that the order is in the best interest of the child." It provides:



A court may determine that the application of these guidelines would be
unworkable or inappropriate under the circumstances and not in the best interest
of the child. Without regard to Rules 296 through 299, Texas Rules of Civil
Procedure, in all cases in which possession of a child by a parent is contested and
the possession of the child is set by the court in variance with the guidelines, on
written request made or filed with the court not later than 10 days after the date of
the hearing or on oral request made in open court during the hearing, the court
shall state in the order the specific reasons for all deviations from the standard
possession order.



Tex. Fam. Code Ann. § 14.033(k) (Supp. 1992). The Code makes it clear that the standard
possessory order is merely a guide for setting the terms and conditions of possession:


(b) In determining the terms and conditions for possession of a child by a parent
named as a possessory conservator, the court shall be guided by the guidelines in
Sections 14.032 and 14.033 of this code.



Tex. Fam. Code Ann. § 14.03(b) (Supp. 1992) (emphasis added); see also Marriage of DMB and
RLB, 798 S.W.2d 399 (Tex. App. 1990, no writ). The court may in its discretion deviate from
the standard order, but upon proper request the court must state the reasons justifying a variance. 
Appellant cannot complain of the absence of express fact findings because he requested no
findings. Points of error six and twenty-four are overruled.



SUFFICIENCY OF THE EVIDENCE


 In points of error seven through twenty appellant asserts that the evidence was
legally and factually insufficient to support fourteen of the trial court's findings. Appellant attacks
the legal and factual sufficiency of the evidence to support the following findings of fact:



1. That JUDY LYN ROWOLDT performed the vast majority of the child
rearing during the marriage.


2. That JOHN LOUIS ROWOLDT played a limited role in the rearing of the
children.


3. That JOHN LOUIS ROWOLDT was frequently gone from the home for
significant periods of time.


5. That until the time of trial, JOHN LOUIS ROWOLDT showed limited
interest in the schoolwork of the children.


7. That JOHN LOUIS ROWOLDT did not appear to be interested in the
extracurricular activities of the children.


9. That JUDY LYN ROWOLDT was appropriately protective of the children.


11. That JOHN LOUIS ROWOLDT and JUDY LYN ROWOLDT both
appeared to have been dating during the long separation.


12. That JOHN LOUIS ROWOLDT was extremely jealous of the relationship
of both JUDY LYN ROWOLDT and his children with RANDALL
GOODGION.


13. That during the lengthy separation, JUDY LYN ROWOLDT provided a
stable, happy home for the children.


14. That during the lengthy separation, JOHN LOUIS ROWOLDT appeared
to play mind-games with the children and "grilled" the children, causing
turmoil for them.


18. That the court was concerned that the masturbation by JOHN LOUIS
ROWOLDT, while apparently watching the children, indicated that the
children were possible objects of JOHN LOUIS ROWOLDT's sexual
fantasies during such masturbation.


21. That DEBRA MUSE, a licensed professional counselor, had some concerns
about JUDY LYN ROWOLDT as a mother, but that JUDY LYN
ROWOLDT responded well to DEBRA MUSE's suggestions.


23. That JOHN LOUIS ROWOLDT appeared to have the best interests of
JOHN LOUIS ROWOLDT in mind rather than the best interests of the
children in mind.


24. That JUDY LYN ROWOLDT appeared to have the best interests of the
children in mind rather than herself. 



 In considering a "no evidence" point, the reviewing court must reject all evidence
contrary to the jury's findings and consider only the facts and circumstances which tend to support
those findings. Renfro Drug Co. v. Lewis, 235 S.W.2d 609 (Tex. 1950); see also Kelly v.
Applewhite, 231 S.W.2d 974 (Tex. Civ. App. 1950, writ ref'd n.r.e.). In reviewing factual
sufficiency points of error, the reviewing court considers all of the evidence to determine whether
the findings are so against the great weight and preponderance of the evidence as to be manifestly
unjust. In re King's Estate, 244 S.W.2d 660 (Tex. 1951).

 Managing conservatorship was the principal contested issue below. The trial court
heard testimony from both parties, a licensed professional counselor, relatives of the parties,
neighbors, babysitters, and friends. The record contains evidence supporting the trial court's
findings of fact.

 Appellant testified that he was a construction worker and that in the past his work
frequently required him to be out of town for periods of up to one year; before the separation
appellee had stayed with the children during the day; he had never stayed with the children during
the day because of his work. He further stated that after the separation his sister, not appellant,
frequently cared for the children during his visitation times. Appellant admitted that during his
summer visits he refused to take his children to gymnastics classes in which they were enrolled
because it was too far to drive. Appellant also testified that appellee caught him masturbating in
his home shop during the day when he should have been working. He testified that on this
occasion he was unaware of the presence of several children nearby.

 Appellant's jealousy of appellee's relationship with Randall Goodgion could be
inferred from his testimony. Appellant testified that he felt the relationship between appellee and
Goodgion was causing problems for the children; that he was concerned about Goodgion being
a poor role model for the children; that he and Goodgion had previously worked together but
appellant left that job because of the relationship between Goodgion and appellee; that he had
watched appellee's house to see if Goodgion was spending the night; and that it was "killing him"
to have another man spending the night with appellee while the children were present.

 Appellee testified that she provided more of the child rearing than appellant and that
appellant was frequently gone for prolonged periods, sometimes months at a time. She stated that
she helped the children with their school work far more often than appellant. Appellant never
expressed concerns about the way she was raising the children until after she filed for divorce. 
Appellee's testimony revealed that sexual problems were partially responsible for the breakup of
the marriage. The parties separated shortly after appellee became concerned about the potential
for incest between appellant and the children because of appellant's statements made after viewing
a television program on incest and because she caught appellant masturbating in a shed while the
children were playing nearby. Appellee testified that after the separation she had observed "mind
games" appellant played with the children, such as asking the children to pray that he and appellee
would get back together.

 Debra Muse, a licensed professional counselor, conducted numerous counseling
sessions with the parties and the children. She testified that the children seemed comfortable with
both parents. She stated that appellee was taking responsibility for her shoplifting problem, was
remedying communications problems with the children and was responding well to Muse's
suggestions.

 Other evidence also supports the challenged findings of fact. Gaye Pelzel, a
long-time friend of the family who teaches at the school the children attended, testified that she
frequently observed appellee with the children and that appellee was a very good mother. Pelzel
also testified that the children were well dressed and well behaved. Cindy Key, a friend of the
family who provided child care for the children during the summer, testified that appellee was
much more involved with the children than appellant. Key testified that the children's normal,
happy attitude would noticeably change to a cowering attitude after returning from visits with
appellant. Jo-Ann Groat, appellee's close friend, testified that appellant's interactions with the
children were very limited. Belinda White, appellant's sister, testified that she took care of the
children for appellant during the day when he was absent; when appellant was present, the older
girls took care of themselves and White took care of the youngest child, except that appellant
would dress her on Sundays. 

 After reviewing the entire record we find that there was sufficient evidence for the
trial court to make all of the findings of fact except finding number eleven. We find no evidence
in the record to support the judge's finding that both parents dated during the long separation. 
Point of error thirteen, complaining of the sufficiency of the evidence to support this fact finding,
is therefore sustained. However, this error is not grounds for reversal because the remaining fact
findings are sufficient to support the judgment. Before a judgment can be reversed and a new trial
ordered, an appellate court must find that "the error complained of amounted to such a denial of
the rights of the appellant as was reasonably calculated to cause and probably did cause rendition
of an improper judgment in the case, or was such as probably prevented the appellant from
making a proper presentation of the case to the appellate court; . . ." Tex. R. App. P. Ann.
81(b)(1) (Pamph. 1992).

 Points seven through twelve and fourteen through twenty are overruled.



LEGAL CONCLUSIONS


 In points of error twenty-one through twenty-three appellant complains that the trial
court abused its discretion in arriving at the conclusion "[t]hat the best interests of the children
would be served by naming JUDY LYN ROWOLDT as the Sole Managing Conservator."

 In determining questions of managing conservatorship, the best interest of the child
is the primary concern. Tex. Fam. Code Ann. § 14.07(a) (1986). Trial courts have wide
discretion in determining the best interests of the child, and their judgment will only be reversed
for an abuse of discretion. Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982); Garza v.
Garza, 718 S.W.2d 825, 827 (Tex. App. 1986, no writ). The trial court's judgment in
determining the best interest of the child and awarding custody in accordance with this
determination should be reversed only when it appears from the record as a whole that the court
abused its discretion. Herrera v. Herrera, 409 S.W.2d 395 (Tex. 1966). 

 The test for abuse of discretion is whether the trial court acted in an arbitrary or
unreasonable manner without guiding rules or principles. Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986). The mere fact that
a trial court may decide a matter within its discretionary authority differently from what a
reviewing court might decide in similar circumstances does not demonstrate an abuse of
discretion. Id. at 242. 

 After considering the record as a whole, we conclude that the findings and the
judgment are supported by evidence. Therefore, the trial court did not abuse its discretion by
naming appellee managing conservator of the children. Points of error twenty-one through
twenty-three are overruled.

 Appellant raises point of error five only in the event that the cause is remanded on
other grounds. Since it is not, we do not address that point.

 For the above-stated reasons, we affirm the trial court's judgment.



 

 Marilyn Aboussie, Justice

[Before Chief Justice Carroll, Justices Aboussie and Kidd]

Affirmed

Filed: June 3, 1992

[Do Not Publish]