

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-23-00828-CV

**IN THE INTEREST OF R.P.**, a Child

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-PA-01371
Honorable Raul Perales, Judge Presiding

Opinion by:   Patricia O. Alvarez, Justice

Sitting:       Patricia O. Alvarez, Justice
               Irene Rios, Justice
               Liza A. Rodriguez, Justice, dissenting without opinion

Delivered and Filed: February 28, 2024

REVERSED AND REMANDED

In this suit affecting Mom's relationship with her son, R.P.,[1] Mom successfully completed the Department's service plan in her bid for reunification.   What proved insurmountable in the time before trial was her son's lasting emotional trauma from her previous neglectful supervision.   Even after R.P. worked with a licensed therapist and a life skills coach for many months, R.P. expressed suicidal thoughts about reuniting with Mom.   In that context, the trial court found that reunification was not in R.P.'s best interest.   The trial court granted permanent managing conservatorship to R.P.'s aunt and no possessory rights to Mom.   On appeal, Mom contends that the evidence presented by the Department does not justify the trial

---

[1] We use aliases to protect the child's identity.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

court's ruling. Because the Department did not meet its burden under Texas Family Code section 161.205 to rebut the legal presumption in favor of Mom with evidence of *specific actions or omissions of the parent* that demonstrate an award of custody to her would result in physical or emotional harm to the child, we must reverse and remand the case for a new trial.

## BACKGROUND

When R.P. was thirteen years old, he was removed from Mom due to her neglectful supervision. At the time, Mom struggled with drug abuse and was unable to maintain running water or electricity at home. The Department placed R.P. with his paternal aunt (R.P.'s father is deceased) and began working with Mom on a service plan.

Mom successfully completed her service plan and entered a work training program. Her caseworker agreed at trial that Mom's improvement was dramatic—among the best. However, R.P. (14 years old at the time of trial) harbored resentment about his past neglect and refused to see Mom. He expressed suicidal feelings regarding reunification.

Mom's attorney argued that the Department and its agents did not make a sufficient effort to bring R.P. and Mom together before trial. But everyone who worked with R.P. during this case—his licensed counselor, his life skills coach, his attorney ad litem, and his aunt—agreed that R.P. was not emotionally ready for reunification. The Department requested that Mom not be allowed to visit with R.P. until a licensed therapist recommended it.

The trial court adopted the Department's recommendation and granted sole managing conservatorship to R.P.'s aunt with no possessory rights or access for Mom. This appeal follows.

**STANDARD OF REVIEW**

"The trial court is vested with broad discretion in making decisions on custody, control, possession, and visitation, and we review such decisions for an abuse of discretion." *C.W. v. B.W.*, No. 02-19-00270-CV, 2020 WL 4517325, at *2 (Tex. App.—Fort Worth Aug. 6, 2020, no pet.) (mem. op.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). In doing so, we consider both express and implied findings in support of the judgment. *See In re J.E.*, No. 09-09-00476-CV, 2010 WL 5232977, at *10 (Tex. App.—Beaumont Dec. 16, 2010, no pet.) (mem. op.) (citing *Chavez v. Chavez*, 148 S.W.3d 449, 455–56 (Tex. App.—El Paso 2004, no pet.), *superseded on other grounds as stated in In re L.D.F.*, 445 S.W.3d 823, 829 n.4 (Tex. App.—El Paso 2014, no pet.)); *accord In re C.E.R.*, No. 04-22-00374-CV, 2022 WL 17332598, at *4 (Tex. App.—San Antonio Nov. 30, 2022, no pet.) (mem. op.).

"A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its ruling, even if the record contains conflicting evidence." *In re L.M.R.*, No. 04-19-00892-CV, 2020 WL 1695505, at *2 (Tex. App.—San Antonio Apr. 8, 2020, no pet.) (mem. op.) (citing *In re H.N.H.*, No. 04-18-00574-CV, 2019 WL 2996972, at *2 (Tex. App.—San Antonio July 10, 2019, no pet.) (mem. op.)). However, "[w]hen the facts are undisputed, a trial court abuses its discretion by incorrectly analyzing the law or by misapplying the law to the undisputed facts." *In re J.M.M.*, No. 13-20-00086-CV, 2021 WL 4897665, at *8 (Tex. App.—Corpus Christi–Edinburg Oct. 21, 2021, no pet.) (mem. op.) (citing *Lawson v. Archer*, 267 S.W.3d 376, 383 (Tex. App.—Houston [14th Dist.] 2008, no pet.)).

**BEST INTEREST OF R.P.**

**A.    Parties' Arguments**

Mom argues that the trial court abused its discretion by not appointing her as a conservator or granting her access to R.P.  In support of her argument, she cites Texas Family Code sections 153.193 (requiring minimal restrictions on a parent's possession or access) and 153.002 (requiring the best interest of the child to be the primary consideration in conservatorship, possession, and access determinations).  The Department argues that denying Mom conservatorship and access to R.P. was necessary for R.P.'s emotional and physical wellbeing.

**B.    Law**

"In a termination proceeding, if the trial court does not order termination of the parent-child relationship, it shall either (1) deny the Department's petition or (2) render any order in the best interest of the child."  *In re L.M.R.*, 2020 WL 1695505, at *2 (citing TEX. FAM. CODE ANN. § 161.205); *accord In re C.E.R.*, 2022 WL 17332598, at *2.

Subsection 161.205(2) (rendering any order in the best interest of the child) predictably implicates sister statutes regarding conservatorship and access.  *See In re A.M.T.*, 592 S.W.3d 974, 976 (Tex. App.—San Antonio 2019, pet. denied); *In re A.D.*, 480 S.W.3d 643, 645 (Tex. App.—San Antonio 2015, pet. denied); *Harris v. Tex. Dep't of Family & Protective Services*, 228 S.W.3d 819, 823 (Tex. App.—Austin 2007, no pet.); *In re C.E.R.*, 2022 WL 17332598, at *4; *In re L.M.R.*, 2020 WL 1695505, at *2.  *But see In re M.I.A.*, 594 S.W.3d 595, 607 (Tex. App.—San Antonio 2019, no pet.) (holding that broad authority granted by TEX. FAM. CODE ANN. § 161.205 trumped proof and pleading requirements of § 153.433, Possession of or Access to Grandchild).

Specifically, if a parent's rights are not terminated, then "a presumption exists [under Texas Family Code section 153.131] that appointing the parent as the sole managing conservator is in the child's best interest." *J. H. v. Tex. Dep't of Family & Protective Services*, No. 03-21-00162-CV, 2021 WL 2834719, at *3 (Tex. App.—Austin July 8, 2021, no pet.) (mem. op.) (citing *In re M.J.C.B.*, No. 11-14-00140-CV, 2014 WL 6433378, at *1–2 (Tex. App.—Eastland Nov. 14, 2014, no pet.) (mem. op.) (citing TEX. FAM. CODE ANN. § 153.131); *In re C.J.C.*, 603 S.W.3d 804, 807 (Tex. 2020) (recognizing that "[t]he presumption that the best interest of the child is served by awarding custody to [a] parent is deeply embedded in Texas law") (quoting *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000)); *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (explaining that "there is a strong presumption that the best interest of a child is served by keeping the child with a parent") (citing TEX. FAM. CODE ANN. § 153.131(b))).

This means that, under Texas Family Code section 161.205, before a trial court can even reach the issue of possessory conservatorship and access, the nonparent must first overcome the presumption that the child's best interest is served by appointing their parent as managing conservator. *See* TEX. FAM. CODE ANN. §§ 153.131(a) ("[U]nless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child."), 153.191 ("The court shall appoint as a possessory conservator a parent *who is not appointed as a sole or joint managing conservator* unless it finds that the appointment is not in the best interest of the child and that parental possession or access would endanger the physical or emotional welfare of the child."); *In re Walters*, 39 S.W.3d 280, 286 (Tex. App.—Texarkana 2001, no pet.) (reaching the issue of possessory conservatorship

means that the foundation has been laid for the court to conclude that unrestricted possession would endanger the physical or emotional welfare of the child).

To overcome the parental presumption under section 153.131, the nonparent must prove by a preponderance of the evidence "that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." *In re C.E.R.*, 2022 WL 17332598, at *2 (citing TEX. FAM. CODE ANN. § 153.131(a); *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007)). This requires proof "of *specific actions or omissions of the parent* that demonstrate an award of custody to the parent would result in physical or emotional harm to the child." *A.S. v. Tex. Dep't of Family & Protective Services*, 665 S.W.3d 786, 796 (Tex. App.—Austin 2023, no pet.) (emphasis added) (citing *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex. 1990); *In re F.N.*, 579 S.W.3d 74, 78 (Tex. 2019) (op. denying pet.)); *accord In re M.L.*, No. 02-15-00258-CV, 2016 WL 3655190, at *4 (Tex. App.—Fort Worth July 7, 2016, no pet.) (mem. op.). *But see In re Rodriguez*, 940 S.W.2d 265, 273 (Tex. App.—San Antonio 1997, no writ) (declining "to engraft the *Lewelling* language onto the section 153.131").[2]

More specifically, "the material time concerning fitness for child custody is the present. If the parent is presently a suitable person to have custody, the fact that there was a time in the past when the parent would not have been a proper person to have such custody is not controlling." *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied); *accord Critz v. Critz*, 297 S.W.3d 464, 475 (Tex. App.—Fort Worth 2009, no pet.); *In re M.L.*, 2016 WL 3655190, at *4 (citing *In re S.T.*, 508 S.W.3d 482, 492 (Tex. App.—Fort Worth 2015, no pet.).

---

[2] The Thirteenth Court of Appeals in *Gray v. Shook* considered *In re Rodriguez*'s characterization of section 153.131 to be a "blatant misstatement of the law." *See Gray v. Shook*, 329 S.W.3d 186, 197 (Tex. App.—Corpus Christi–Edinburg 2010), *aff'd in part, rev'd in part*, 381 S.W.3d 540 (Tex. 2012).

Therefore, when we review an order under subsection 161.205(2) (making any order in the child's best interest) that denies a parent managing conservatorship, we must look for some evidence of a substantive and probative character that proves the parent is presently an unsuitable person to have custody. *See In re L.M.R.*, 2020 WL 1695505, at *3; *R. H. v. D. A.*, No. 03-16-00442-CV, 2017 WL 875317, at *4 (Tex. App.—Austin Mar. 2, 2017, pet. dism'd) (mem. op.) (citing *Lewelling*, 796 S.W.2d at 167); *In re M.L.*, 2016 WL 3655190, at *4. "It is no longer adequate to offer evidence that the nonparent would be a better custodian of the child." *Lewelling*, 796 S.W.2d at 167 (citing *Mumma v. Aguirre*, 364 S.W.2d 220, 221 (Tex. 1963)).

If the trial court reaches the issues of possession and denies a parent access, it must be because the case nearly resulted in termination. *See In re C.L.J.S.*, No. 01-18-00512-CV, 2018 WL 6219615, at *5 (Tex. App.—Houston [1st Dist.] Nov. 29, 2018, no pet.) (mem. op.); *accord Philipp v. Tex. Dep't of Family & Protective Services*, No. 03-11-00418-CV, 2012 WL 1149291, at *8 (Tex. App.—Austin Apr. 4, 2012, no pet.) (mem. op.); *Fish v. Lebrie*, No. 03-09-00387-CV, 2010 WL 5019411, at *9 (Tex. App.—Austin Dec. 10, 2010, no pet.) (mem. op.). Notably, termination factors depend first and foremost on a parent's acts and omissions. *See* TEX. FAM. CODE ANN. § 161.001(b)(1); *In re A.Y.C.*, 665 S.W.3d 800, 810 (Tex. App.—Houston [14th Dist.] 2023, pet. denied).

Even under the *Holley* factors for weighing a child's best interest, which provide a child-centered analysis that "focuses on the child's well-being, safety, and development,"[3] there is only one factor that does not consider the parent's acts or omissions or capacity to parent—the desires of the child. *See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). All the other factors view the child's best interest through the lens of parenting. *See id.* (citing *Herrera v. Herrera*, 409 S.W.2d 395, 399 (Tex. 1966); *Mumma*, 364 S.W.2d at 223).

---

[3] *In re A.Y.C.*, 665 S.W.3d 800, 810 (Tex. App.—Houston [14th Dist.] 2023, pet. denied).

We recognize that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002; *accord In re J.H.*, No. 02-18-00249-CV, 2018 WL 6113172, at *7 (Tex. App.—Fort Worth Nov. 21, 2018, no pet.) (mem. op.); *In re C.M.*, No. 02-17-00381-CV, 2018 WL 2123472, at *3 (Tex. App.—Fort Worth May 9, 2018, no pet.) (mem. op.). We also recognize that the trial court's duty in weighing the evidence to make conservatorship and access decisions in the best interests of the child is time-constrained and fact-intensive. *See In re Ruiz*, 16 S.W.3d 921, 926 (Tex. App.—Waco 2000, no pet.) (citing TEX. FAM. CODE ANN. § 263.401); *In re De La Pena*, 999 S.W.2d 521, 529 (Tex. App.—El Paso 1999, no pet.).

But as mentioned, where the parent's rights have not been terminated, the child's best interest is presumed to be with the parent unless the nonparent has proved that the child's physical health or emotional development will be significantly harmed by the parent's acts or omissions. *See A.S.*, 665 S.W.3d at 796–97. It is after all the parent's right to the care, custody, and management of their child that is being decided,[4] and it "does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (cited in *In re J.F.C.*, 96 S.W.3d 256, 273 (Tex. 2002)).

## C. Analysis

### 1. Case Summation

At the outset of this case, the Department filed a petition for conservatorship of R.P. and termination of Mom's parental rights due to Mom's struggles with drug addiction and neglectful

---

[4] *Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("[T]he interest of parents in the care, custody, and control of their children [ ] is perhaps the oldest of the fundamental liberty interests recognized by the courts."); *accord In re B.B.M.*, 291 S.W.3d 463, 468 (Tex. App.—Dallas 2009, pet. denied).

supervision of R.P. The petition faced Mom with a choice: overcome her struggles or face termination of her parental rights to R.P. *See* TEX. FAM. CODE ANN. § 161.001(b); *In re A.Y.C.*, 665 S.W.3d at 810.

Over the course of the case with the Department, Mom undisputedly succeeded in her service plan. The Department agreed that her improvement during the case was one of the best improvements the Department has seen, and it explicitly did not pursue termination of her rights at trial. Instead, the Department presented evidence that R.P. was not emotionally ready to return to Mom's care. It requested that R.P.'s paternal aunt be awarded permanent managing conservatorship and that R.P. not be required to visit with Mom until R.P.'s therapist deemed him ready.

### 2. Trial Testimony

#### a. Department's Caseworker

The Department first presented testimony from the caseworker in Mom's and R.P.'s case who stated she feared that R.P. would commit suicide if returned to Mom because of his memories of his past unstable life with her. She testified that R.P. was refusing to see Mom or to accept any alternate forms of communication with her, such as video calls or any kind of mediated calls with the caseworker or a therapist.

During her testimony, the caseworker agreed that Mom repeatedly requested counseling with R.P. but that it did not occur because R.P. would shut down and become depressed when anyone talked to him about Mom. According to the caseworker, it was unclear how long it would take R.P. to accept communication with Mom; she agreed it could take a month or even five years. But she also testified that Mom's home seemed safe and appropriate and that she had

no concerns that Mom would hurt R.P. She agreed that Mom's completion of her service plan would normally result in reunification.

b. R.P.'s Life Skills Coach

The Department next presented testimony from R.P.'s life skills coach. She stated that she had been working with R.P. on coping with his strong negative feelings for Mom for about seven months by the time of trial. She testified that she was not qualified to offer diagnoses or predictions for R.P., but she identified the source of his strong negative feelings for Mom as her previous drug use and their previous homelessness.

c. R.P.'s Licensed Professional Counselor

Next, R.P.'s licensed professional counselor testified that she had been working with R.P. for eight months and that she diagnosed R.P. with adjustment disorder with depressive symptoms. She explained that "when someone goes through a transition or a trauma, something traumatic, they can display different types of symptoms such as depression, anxiety[, and/or] behavioral conduct [sic]." She stated that R.P. displayed depressive symptoms, such as suicidal ideation, anger, and irritability, that she predicted would increase if he were returned to Mom's custody because he feared homelessness and "things he had to experience while living with her."

R.P.'s counselor testified that she addressed Mom's changes with R.P.—that Mom was no longer homeless and had completed classes to address her drug addiction. However, R.P.'s counselor testified that she did not address Mom's work training program with R.P. because she was unaware of it.

Overall, R.P.'s therapist believed that visitation with Mom should not occur unless recommended by a therapist at a later time. She agreed that, in cases where a child has an issue with a parent that is not rooted in physical or sexual abuse, it would normally be recommended

for a parent to participate in counseling with the child. But she conceded that it was not done in this case, though Mom requested it.

### d. R.P.'s Aunt

After R.P.'s counselor testified, the Department called his aunt. R.P.'s aunt testified that R.P. had been living with her for nearly eleven months at the time of trial. She agreed that she was willing to care for R.P. and that she would keep R.P. enrolled in therapy to facilitate future visitation with Mom. She testified that she tried to talk to R.P. about Mom, but that he would cry and become depressed when she raised the issue. She stated that he expressed suicidal feelings about the thought of returning to Mom because he feared homelessness. The aunt said that she offered to take R.P. to see Mom's apartment, but that he refused.

### e. Mom

Mom testified last. She stated that she had been clean and sober for ten months leading up to trial. She stated that she had enrolled in a work training program that promised to place her in a part-time custodial job at its conclusion. She testified that she was renting a two-bedroom apartment in the hopes that R.P. would reunite with her and live there. She stated that she understood R.P. felt stable with his aunt and wanted to stay there, but that she believed she could provide for R.P. and wanted to rebuild her relationship with him.

### 3. *Trial Court's Ruling*

The trial court commended Mom on her progress but placed R.P. with his aunt. The trial court stated that it would confer with R.P. and then issue the final order. In the final order, the trial court awarded R.P.'s aunt sole managing conservatorship. It denied Mom possessory conservatorship and any other possession or access. Mom requested findings of fact and

conclusions of law and later filed a reminder notice, but the trial court never issued any findings or conclusions.

### 4. *De Novo Hearing*

The trial court held a de novo hearing with a different presiding judge the following month, during which Mom argued that the law could not support the final order that denied her possession of and access to R.P. The trial court denied relief but ordered updates from the therapist as to reunification status periodically.

### 5. *Review on Appeal*

Understandably, the trial court gave considerable weight to R.P.'s desire to stay with his aunt because he so strongly objected to reunification with Mom and because those who worked with him feared he would harm himself if returned to Mom. *See Holley*, 544 S.W.2d at 372. But the final order failed to account for the dearth of evidence "of specific actions or omissions of the parent that demonstrate an award of custody to the parent would result in physical or emotional harm to the child." *A.S.*, 665 S.W.3d at 796. Without this type of evidence in the record, the trial court abused its discretion by ruling as though the parental presumption under section 153.131 had been rebutted. *See id*. This is because section 161.205 implicated the parental presumption,[5] and the Department was therefore required to present rebuttal evidence of current "*specific actions or omissions of the parent* that demonstrate[d] an award of custody to the parent would result in physical or emotional harm to the child." *See id*. at 796–97. The Department did not present evidence that met the rebuttal metric under section 153.131. Instead, it presented evidence that Mom completed her service plan, that her improvement over the course of her case was one of the best, and that her apartment was safe and appropriate for R.P. As a result, there is no evidence in the record to show that Mom is presently an unsuitable person to have custody.

---

[5] *See In re A.M.T.*, 592 S.W.3d 974, 976 (Tex. App.—San Antonio 2019, pet. denied).

Accordingly, we must reverse and remand for further proceedings under Texas Family Code sections 161.205 and 153.131. [6]

## CONCLUSION

We conclude that the trial court abused its discretion in denying Mom conservatorship and access to R.P. when the Department offered no current evidence *of specific actions or omissions by Mom* demonstrating that awarding custody to her would result in physical or emotional harm to R.P.  We now reverse and remand for further proceedings under Texas Family Code sections 161.205 and 153.131.

Patricia O. Alvarez, Justice

---

[6] "When reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when: (a) a remand is necessary for further proceedings; or (b) the interests of justice require a remand for another trial."  TEX. R. APP. P. 43.3; *Gray*, 329 S.W.3d at 197; *In re C.M.C.*, 273 S.W.3d 862, 882 n.13 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (internal citations omitted).