**Opinion filed October 18, 2012**



# In The

# Eleventh Court of Appeals

_____

## No. 11-12-00002-CV

_____

## IN THE INTEREST OF A.D.A., A CHILD

**On Appeal from the 318th District Court**

**Midland County, Texas**

**Trial Court Cause No. FM51,404**

### M E M O R A N D U M   O P I N I O N

This is a custody case that arose after the death of A.D.A.'s mother. The trial court appointed the maternal aunt, Angelina Winslett, and the father, Murry Addison, as joint managing conservators and granted Winslett the exclusive right to determine A.D.A.'s primary residence. The trial court concluded that the parental presumption had been rebutted because it found both that Addison voluntarily relinquished custody to a nonparent for a year and that appointing Addison would significantly impair A.D.A. We reverse and remand.

Addison alleges that there is no evidence or, alternatively, insufficient evidence that appointing him as the sole managing conservator would significantly impair the child's physical or emotional development. Addison also contends that the trial court abused its discretion when it appointed a nonparent as joint managing conservator with the right to designate the child's

residency. Each of Addison's eight issues on appeal attack the grounds relied upon by the trial court to rebut the parental presumption.

We review a determination of conservatorship for abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). Under this standard, legal and factual sufficiency challenges are not independent grounds of error but factors used to determine whether the trial court abused its discretion. *Gardner v. Gardner*, 229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.); *London v. London*, 192 S.W.3d 6, 14 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). It is a two-step analysis. First, we determine whether the trial court had sufficient information upon which to exercise its discretion, and second, we determine whether the trial court erred in its application of discretion. *Gardner*, 229 S.W.3d at 751.

"Where findings of fact and conclusions of law are not properly requested and none are filed, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence." *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984). But we will sustain a legal sufficiency challenge if the evidence of a vital fact is absent, does not rise above a mere scintilla, or establishes the opposite of that vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). We consider the evidence favorable to the finding if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).

The best interest of the child is always the primary consideration of the court in determining managing conservatorship. TEX. FAM. CODE ANN. § 153.131 (West 2008). "While trial courts should be afforded broad discretion in deciding family law questions, the Legislature has explicitly limited the exercise of that discretion when a nonparent seeks appointment as managing conservator." *Lewelling v. Lewelling*, 796 S.W.2d 164, 168 (Tex. 1990).

When a court determines conservatorship between a parent and a nonparent, there is a presumption that appointing the parent as the sole managing conservator is in the child's best interest, and this presumption is deeply embedded in Texas law. Section 153.131(a); *Lewelling*, 796 S.W.2d at 166 (citing *Mumma v. Aguirre*, 364 S.W.2d 220, 221 (Tex. 1963)). "It is no longer adequate to offer evidence that the nonparent would be a better custodian of the child," and close calls should be decided in favor of the parent. *Lewelling*, 796 S.W.2d at 167 (citing *Mumma*, 364 S.W.2d at 221). Thus, a nonparent seeking conservatorship has a heavy burden.

To rebut the parental presumption, a court must find that (1) the appointment would significantly impair the child's physical health or emotional development; (2) the parent voluntarily relinquished care, control, and possession of the child to a nonparent for a year or more; or (3) the parent has exhibited a history of family violence. TEX. FAM. CODE ANN. §§ 153.131, .373, .004 (West 2008). The evidence that rebuts the parental presumption focuses on the parent's conduct.

The trial court found both that Addison voluntarily relinquished care, custody, and control of the child and that appointing Addison as sole managing conservator would significantly impair the child's physical health or emotional development. The trial court also found that it was in the best interest of the child to appoint both parties as joint managing conservators and to grant Winslett the right to determine residency. There were no findings of fact filed in this appeal, so we will address both grounds relied upon by the trial court to determine whether the evidence supports either theory and permits us to uphold the trial court's order.

### *Voluntary Relinquishment*

Winslett's contention at trial and again on appeal was that Addison's sparse contact with A.D.A. for the first ten years of his life proved that he voluntarily relinquished custody. We disagree.

To rebut the parental presumption, the court must find both that the parent voluntarily relinquished actual care, custody, and control of the child to a nonparent for a period of one year or more and that appointment of a nonparent is in the child's best interest. Section 153.373. Voluntary relinquishment may be shown by evidence of intent to surrender custody and care. *See Critz v. Critz*, 297 S.W.3d 464, 473 (Tex. App.—Fort Worth 2009, no pet.). But relinquishment may be negated by evidence of legal action to pursue custody. *See In re M.W.*, 959 S.W.2d 661, 668 (Tex. App.—Tyler 1997, writ denied).

Because the statute requires relinquishment to a nonparent, we review the record for evidence of voluntary relinquishment after the death of A.D.A.'s mother on June 29, 2010. Winslett admitted at the hearing that, when she called Addison on July 9, 2010, to notify him of the mother's death, he indicated that he wanted possession of his son and would come to Texas the following week. When Addison arrived in Midland on July 17, 2010, and called Winslett, she refused to allow him to visit A.D.A. Instead, she demanded that he contact her attorney.

And when he arrived at Winslett's home shortly thereafter, Addison witnessed two people putting two children in a pickup and driving off. Addison went to the local police station and was instructed to call back when the child had returned to the home. After checking numerous times, the pickup had returned when he went to the home around 1:30 a.m.; however, Winslett was the legal custodian and provided police with an order obtained from a previous guardianship proceeding. Addison hired a local attorney, filed a writ of habeas corpus, and also filed a petition in a suit affecting the parent-child relationship, which is the present case on appeal.

While there is evidence that he surrendered care of A.D.A. to A.D.A.'s mother for the first ten years of his life, we agree with Addison that there is no evidence he intended to voluntarily relinquish actual care, custody, and control of A.D.A. to a nonparent at any time. When he learned that A.D.A.'s mother had died, he immediately sought possession and legal custody. Thus, the trial court abused its discretion when it found that the parental presumption had been rebutted by evidence of voluntary relinquishment.

*Significant Impairment*

Winslett argues that placing A.D.A. in a new and unfamiliar environment would undo A.D.A.'s developmental progress. Addison contends that there is no evidence of any acts or omissions by him that would impair the child and that Winslett proved nothing more than the fact that she has provided a good and stable environment for A.D.A., which is insufficient to rebut the parental presumption. We agree.

To deprive a parent of custody, the nonparent must prove significant impairment by a preponderance of the evidence. TEX. FAM. CODE ANN. § 105.005 (West 2008). There must be evidence that some "specific, identifiable behavior or conduct of the parent, demonstrated by specific acts or omissions of the parent, will" impair the child, either physically or emotionally. *Critz*, 297 S.W.3d at 474 (citing *Lewelling*, 796 S.W.2d at 167). Furthermore, the evidence of harm to the child must be more than "mere surmise or speculation of possible harm." *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi 1992, writ denied) (citing *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

Although courts may infer future conduct from a parent's recent, deliberate conduct in a similar situation, evidence of a parent's past misconduct or neglect, standing alone, is insufficient to show that the parent is presently unfit. *De Llano v. Moran*, 333 S.W.2d 359, 361 (Tex. 1960); *Guillott v. Gentle*, 467 S.W.2d 521, 524 (Tex. Civ. App.—Eastland 1971, writ ref'd n.r.e.).

4

Usually, the nonparent must present evidence that shows a parent's conduct would have a detrimental effect, such as "physical abuse, severe neglect, abandonment, drug or alcohol abuse, or very immoral behavior on the part of the parent." *Gray v. Shook*, 329 S.W.3d 186, 197 (Tex. App.—Corpus Christi 2010), *aff'd in part and rev'd in part*, No. 11-0155, 2012 WL 4746236 (Tex. Oct. 5, 2012). In *Gray*, the child's father was absent for most of the child's life, and the maternal grandmother claimed that placing the child with her father would cause the child to cry, scream, throw up, and wet the bed. *Id.* at 191. Additionally, the grandmother contended that removing the child could cause her to be more bossy and affect relationships with her peers. *Id.* A social worker testified that the vomiting was "possibly" caused by anxiety and that, in similar situations, "*sometimes* depression develops, *sometimes* they're at risk for drug use." *Id.* at 198. Because the only evidence of possible harm to the child was "the 'uprooting' itself—not any specific, identifiable act or omission, conduct or behavior of [the father]," the court concluded that it was an abuse of discretion for the trial court to name a nonparent as sole managing conservator. *Id.* Furthermore, the court concluded that "[e]vidence of sporadic, past vomiting and the *possibility* of negative effects on peer relationships" did not rise above mere speculation of harm. *Id.*

To prove impairment, Winslett called Perry Mark Marchioni, Ph.D. to explain A.D.A.'s psychological, counseling, and special education needs. Dr. Marchioni described A.D.A. as a highly functioning autistic child who, although he suffers from mild mental retardation, has remarkable pronunciation and spelling skills. Because Dr. Marchioni has evaluated thousands of children, he felt qualified to predict how a similar child may respond to being removed from his current home. However, he qualified his answer by stating that he has had minimal contact with A.D.A. and explained how children with developmental disorders might react. He testified that, generally, children with developmental disorders either shut down completely or violently act out. He then stated that he could not "say that 100 percent of the time, it is going to be one end of the spectrum or the other, but most likely reactions are like that." When asked to identify physical problems that might develop, he stated that doing so "would be speculative, at best."

Dr. Marchioni did agree that removing A.D.A. from familiar surroundings would be traumatic and could set him back from where he is today. But, he found it "hard to believe that he would never adjust" and that, over time, A.D.A. would "regain whatever he loses during that period." Although Dr. Marchioni agreed that familiar circumstances would be "a possible better

5

situation," he again qualified his response when he explained that he had not examined either party or their homes. Dr. Marchioni and Winslett both agreed that anyone could learn the necessary skills to properly care for A.D.A.

Winslett testified that, on one occasion, A.D.A. "pooped in his pants once and he peed twice" before they arrived at court and saw his father. But, she later stated that A.D.A. "has accidents when he gets very anxious and nervous." Winslett alleged that A.D.A. would suffer from separation anxiety and nervousness; she did not allege any harm that would be caused by Addison. Winslett testified on cross-examination as follows:

Q: I'm -- let me see if I understand. It's still your position, I'm sure, that you think it would be in [A.D.A.]'s best interest for him to stay with you?

A: Yes, sir.

Q: And is that because of your fear that if he were deprived of you, that he would have some anxiety and suffer some harm because of being separated from you?

A: Yes, sir.

Q: Is that because of your fear that he would be going to a place that he doesn't know?

A: Yes, sir.

Q: All right. What do you actually know about where [Addison] lives?

A: I don't know anything about Mr. Murry Addison.

Q: Okay. You don't know -- do you know anything about his family?

A: I do not.

Q: What do you know about the school system in and around where he lives?

A: Why would I even look up that? No, I don't.

Q: You know nothing, is what you are saying?

A: Nothing.

Absent evidence of a specific act or omission by Addison that would cause harm, the parental presumption cannot be overcome. We find no such evidence in the record. The harm revealed by the record is similar to the mere speculative harm in *Gray*. A.D.A.'s accidents were not caused by Addison but by anxiety and nervousness. The only harm to the child is the "uprooting" itself rather than some conduct by the parent. In fact, the trial court expressly stated that its judgment was "really not a reflection on you, sir; it is on the circumstances of the child. I think it would be emotionally damaging [to remove A.D.A.] from his present environment." The relationship between a parent and child is protected by the statutory presumption that custody by the natural parent is in the best interest of the child. Before a court awards custody to a nonparent, there must be evidence of conduct or actions of the parent that cause harm to the child. *See Lewelling*, 796 S.W.2d at 167. Thus, the trial court abused its discretion when it found that appointing Addison as sole managing conservator would significantly impair the child's physical health or emotional development.

Because there was no evidence of voluntary relinquishment of care to a nonparent and no evidence of acts or omissions by Addison that would significantly impair A.D.A., Winslett failed to meet her burden to rebut the parental presumption. Addison's issues on appeal are sustained. Although we would usually reverse and render when we sustain a legal sufficiency challenge, we are permitted to remand such cases as this when further proceedings are necessary and when the interest of justice so requires. TEX. R. APP. P. 43.3; *Shook v. Gray*, No. 11-0155, 2012 WL 4746236 (Tex. Oct. 5, 2012).

In his prayer for relief, Addison asked us to remand for entry of orders with regard to possessory conservatorship and access to the child. When it appoints a managing conservator, the trial court has discretion to appoint possessory conservators and award visitation rights. TEX. FAM. CODE ANN. § 153.006 (West 2008). In light of this request, the amount of time that has passed since the hearing, and the supreme court's recent opinion in *Shook*, we remand this case to the trial court for further consideration. *See Shook*, 2012 WL 4746236, at *2 (remanding for trial court to reconsider conservatorship).

7

The order of the trial court is reversed, and the cause is remanded for further proceedings.


JIM R. WRIGHT

CHIEF JUSTICE


October 18, 2012

Panel[1] consists of: Wright, C.J.,
McCall, J., and Hill.[2]

---

[1]Eric Kalenak, Justice, resigned effective September 3, 2012.  The justice position is vacant pending appointment of a successor by the governor or until the next general election.

[2]John G. Hill, Former Chief Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.